Tony L. MILLER, Plaintiff–Appellant,

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Defendant–Appellee.**

No. 86–3059.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1986.

Decided Nov. 24, 1987.

---

Elmer I. Schwartz, Wallace R. Steffen (argued), Cleveland, Ohio, for plaintiff-appellant.

Forrest A. Norman, James M. Speros (argued), Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for defendant-appellee.

Before ENGEL and JONES, Circuit Judges, and EDWARDS, Senior Circuit Judge.

ENGEL, Circuit Judge.

This appeal illustrates, in graphic form, how a relatively simple set of facts in a controversy can nonetheless implicate difficult and subtle issues extending over many areas of federal law. The general area of law at issue here is the extent to which the principles of federal preemption law impact, in an industrial setting, upon private state actions for defamation.

Plaintiff appeals from the dismissal of his defamation claim brought against his former employer. The claim was originally brought in Ohio state court and was removed to federal court under 28 U.S.C. § 1441. Upon plaintiff's motion to reconsider the earlier grant of removal and defendant's motion to dismiss the complaint, the trial court denied the former and granted the latter on the ground that the facts of the defamation claim had already been litigated by a public law board, and that since truth was a defense to a defamation claim, the complaint would be dismissed because the public law board found that Miller had done that of which the defamatory statement had accused him.

The dispute in this case began in 1982, when Miller, then a supervisory employee for Norfolk and Western Railway Co. (N & W), was discharged on the ground that he had defrauded his employer. Although his job as a supervisor was not covered by a collective bargaining agreement, Miller had seniority bumping rights as a non-supervisory employee. After first unsuccessfully contesting his discharge as a supervisor, Miller asserted his rights under the CBA for reinstatement as an electrician. The reinstatement action was brought before the public law board under the terms of the Railway Labor Act, 45 U.S.C. § 151 et seq. No one disputes that this was proper procedure. The public law board determined that Miller had indeed defrauded the company, and that his termination from N & W was proper under the CBA.

Miller's suit was filed in the Ohio state court in 1983. In paragraph 3 of his state court complaint Miller made his main contention:

In the middle and latter part of August, 1982, and thereafter, defendant through its officers and supervisory personnel, made slanderous and libelous statements about the plaintiff to the effect that plaintiff had procured from defendant's suppliers property for his own use and that such property was billed to the defendant and paid for by defendant. Such

slanderous and libelous statements refer to the purchase of brooms and also automobile parts, allegedly for plaintiff's automobile. Plaintiff says that such statements did not come to his knowledge, and he had no reasonable way of knowing that such statements had been made, until August 13, 1982, and thereafter; and further says that such statements are completely untrue and amount to, and were intended for the purpose of, defamation of plaintiff's character.

In paragraph 5, he alleged:

Plaintiff was one of the persons to benefit from and be protected by the Employment Protection Conditions imposed by the Interstate Commerce Commission, pursuant to 49 U.S.C. § 11347, and finance docket No. 29340, etc., resulting from a consolidation between the defendant, Norfolk & Western Railway Company and Southern Railway Company in July of 1982. Plaintiff says that defendants in falsely accusing plaintiff of dishonesty were acting deliberately, intentionally, and maliciously, and in accordance with a plan to reduce the number of its employees and supervisory personnel, including plaintiff, in order to relieve itself of the monetary allowances and benefits for which it would be liable.

Miller claimed lost earnings of $45,000 because of the "slanderous and maliciously false statements made by defendant," and because his earning capacity had been permanently impaired. He also alleged that he had suffered mental anguish, and asked for compensatory damages of $800,000 and punitive damages of $1,200,000.

N & W removed this case to the district court on the basis that the complaint's reference to 49 U.S.C. § 11347, and an allegedly mandatory but omitted reference to the Railway Labor Act, 45 U.S.C. § 153, provided jurisdiction under 28 U.S.C. § 1336, and presumably under 28 U.S.C. § 1331, the general federal question jurisdiction provision.[1]

Plaintiff's petition for remand was premised on his claim that he had not sought recovery pursuant to either the Interstate Commerce Act or the Railway Labor Act. Rather, he claimed that his was a common law action for money damages only, and that no federal relief, such as a demand for job reinstatement, was sought. Miller asserted that 49 U.S.C. § 11347 was cited "merely as one of the factors to consider in determining the damages which arose from the libel, slander, and defamation of plaintiff by defendant.... Paragraph 5 of the Complaint could even be treated as a surplusage; it refers only to damages, and an explanation for defendant's intentional and malicious acts."

The defendant's brief opposing remand asserted that some of its employees and a local auto parts supplier had created a scheme whereby individual employee purchases were paid for by N & W. The defendant claimed that investigation showed Miller had benefitted from this scheme and that, after a hearing, he had been removed. His union, the International Brotherhood of Electrical Workers (IBEW), had filed a grievance, which was arbitrated under 45 U.S.C. § 153, resulting in an award in favor of the company. N & W argued that under the RLA, disputes between railroads and their employees over the application of existing agreements were committed to the exclusive and ultimate resolution of the National Railroad Adjustment Board. It then argued that any action which was brought in state court subject to section 153 was properly removed, even when there was no reference in the complaint to section 153. Miller opposed this memorandum with some of the same arguments he had raised earlier. The railroad responded that it did not mat-

---

1. Our court calendar listed diversity as well as federal question jurisdiction issues. This is an error. So far as we can ascertain from the record before us, the possible existence of diversity jurisdiction was neither advanced by the plaintiff's complaint, by the defendant's petition for removal, nor was the district court's denial of a motion to remand premised upon the existence of complete diversity of citizenship between the parties. Plaintiff's brief on appeal obliquely suggests that he might have alleged diversity. This is the only reference in the entire record. Obviously this is wholly inadequate for the purpose of focussing our attention on appeal upon this possibility.

ter that as a supervisor, Miller had not been covered by the collective bargaining agreement; in all events Miller had voluntarily invoked section 153 arbitration, whose only requirements were that it be between the employee and the carrier, and arise incidentally in the course of employment.

In granting N & W's petition for removal, United States District Judge Thomas Lambros held that although Miller had not invoked the RLA, he had in fact availed himself of the NRAB forum, and his claims in the present action were "predicated on a matrix of facts inextricably intertwined with the employment relationship and the procedures embodied in 45 U.S.C. § 153." We are bound to observe at this point that nowhere in the complaint did Miller allege where the defamation allegedly occurred. When that question was posed to plaintiff's counsel at oral argument on appeal, counsel stated that it occurred in Bellevue, Ohio, but would not be more specific. Thus, it cannot be said on this record that the allegedly defamatory statements for which plaintiff seeks relief were made at the hearing before the public law board, or that they were inextricably intertwined with the § 153 procedures.

Miller then filed a motion for reconsideration of the decision to remove. He once again stated that he had brought only a common law tort action which was not covered by the collective bargaining agreement. Miller further acknowledged that while he had reactivated his status as an employee covered by the collective bargaining agreement when appearing before the public law board, that matter was concluded and was no longer the issue. The defendant's rejoinder was that once plaintiff claimed the benefit of the Railway Labor Act, he was thereafter limited to the remedies provided by that Act, "which plainly exclude private defamation actions."

In denying reconsideration of its previous decision to uphold removal, and in granting N & W's motion to dismiss, the trial judge held that the statements were made "presumably while [Miller] retained status as an employee under the collective bargaining agreement. As such, this matter is subject to the exclusive remedies of the Railway Labor Act." He also referred to the "exclusivity and preemptive effect of the Act," so that even if Miller was not an employee at the time the defamatory statements were made, his claim still was preempted. The public law board's determination that Miller had not been wrongfully discharged precluded a finding that Miller was "somehow defamed in the course of his employment and subsequent discharge." Truth was a defense to defamation. In the trial judge's view, the public law board's previous adjudication that Miller had been dishonest was dispositive of his defamation claim. Thus, the trial judge's first opinion was predicated on federal question jurisdiction, and upon a finding that Miller's claims were inextricably intertwined with the RLA, even though he did not invoke it. In a second opinion, the trial judge found the defamation claim to be subject to the preemptive effect of the Act, so that a wrongful discharge claim that the public law board had rejected under section 153 provided a basis in collateral estoppel for dismissal of that claim on the merits.

At this juncture it is difficult to quarrel with the result reached by the district court. There is very little to commend a state action by an employee who already appears reliably to have been found guilty of dishonesty with his employer. Our difficulty lies in the fact that, however the parties may wish it, federal courts remain courts of limited jurisdiction.

As he did in the district court, Miller argues on appeal that he was not an employee once he was discharged, and that he was either an ex-employee or a non-covered employee, whereas only an employee covered by the collective bargaining agreement would be subject to the RLA. In his reply brief, Miller further argues that his defamation suit is not preempted by the RLA in any case, and that the board's determinations are not entitled to collateral estoppel effect.

The defendant for its part argues that Miller cannot avoid the preemptive effect

of the RLA by artful pleading, and that even if Miller was not actually employed or was not subject to the CBA, the RLA still controls. N & W also argues that the plaintiff waived this issue by raising it for the first time in his reply brief. Of course, this is incorrect. Subject matter jurisdiction is never waived, *Mansfield, Coldwater and Lake Michigan Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). Miller's claims regarding preemption must be considered jurisdictional.

We are of the opinion that the judgment of the district court should be vacated and the case remanded for further but limited proceedings to resolve factual uncertainties which must be clarified before it can be determined that plaintiff's claims are inextricably intertwined with the collective bargaining agreement. At this point and on this record we cannot tell.

Because we must remand, we believe a discussion of preemption law may be helpful to the district court. We find that for the purpose of this analysis, three types of preemption should be mentioned. The first kind of preemption arises when a state statute is attacked as being violative of the Supremacy Clause because Congress has preempted the field covered by the state statute, explicitly through a statute, or implicitly. "Pre-emption, the practical manifestation of the Supremacy Clause, is always a federal question." *Int'l. Longshoremen's Ass'n. v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). An argument raising this kind of preemption may be made in either a state court action or a federal court action. In short, this first form of preemption involves which law governs a case properly before either a federal or a state court. This form of preemption is not involved in this case. The trial judge did not hold that Ohio's defamation law was preempted by the Supremacy Clause and was therefore unconstitutional.

The second kind of preemption, which for lack of a better term we shall call claim preemption, arises in cases such as *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), which holds that an action implicating section 301 of the Labor Management Relations Act, 29 U.S. C. § 185, is one in which courts must apply federal law. Thus, while a state cause of action might not be preempted generally because it conflicts with a federal statute, a claim based on that state cause of action may still be preempted when it comes within the scope of the LMRA, even if section 301 is not invoked by the plaintiff. For example, in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court said that a state rule that purports to permit a suit alleging violation of a provision of a labor contract must be brought under section 301 and be resolved by reference to federal law. However, this sort of preemption is not jurisdictional, because both state courts and federal courts are entitled to exercise concurrent jurisdiction over section 301 claims. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Thus, under claim preemption, the plaintiff may bring suit in either state or federal court, but the case would have to be resolved under federal law even if the plaintiff had framed his suit as a state law claim for breach of the labor contract. Judge Lambros implicitly relied on this form of preemption when he granted the petition for removal. He held that the defamation claim in this case was really nothing more than a suit brought by someone on a claim covered by the collective bargaining agreement, and that a grievance based on that agreement was subject to the Railway Labor Act's dispute resolution procedures. By permitting removal based on federal question jurisdiction, he implicitly decided that the state court could not have heard the case.

The third kind of preemption, expressed in the language of *Int'l. Longshoremen Ass'n. v. Davis, supra,* is choice of forum rather than choice of law preemption. This is the kind of preemption involved in cases such as *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 243–44, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959). *Garmon* preemption is jurisdictional.

[W]hen a state proceeding or regulation is claimed to be pre-empted by the NLRA

under *Garmon*, the issue is a choice-of-forum rather than a choice-of-law question. As such, it is a question whether the State or the Board has jurisdiction over the dispute. If there is pre-emption under *Garmon*, then the state jurisdiction is extinguished. We note that this conclusion derives from congressional intent as delineated in our prior decisions. Thus, our decision today does not apply to pre-emption claims generally but only to those pre-emption claims that go to the State's actual adjudicatory or regulatory power as opposed the State's substantive laws. The nature of any specific pre-emption claim will depend on congressional intent in enacting the particular pre-empting statute.

*Int'l. Longshoremen's Ass'n. v. Davis*, 106 S.Ct. at 1912 & n. 9. This kind of preemption is also involved in this case, but the trial judge did not address it.

The Railway Labor Act does not merely preempt a state law claim that comes within the range of a federal statute, as does the LMRA. As we noted earlier, LMRA actions can be brought in either state or federal courts. However, a state claim which is preempted by the RLA, as by the NLRA under *Garmon*, is instead preempted under a choice of forum analysis. Thus, the issue is not really whether a state claim states a federal cause of action that shall be heard either by a state or a federal court, but which if filed in the state court can be removed. Instead, the question is whether the state claim is preempted by the exclusive jurisdiction of the public law board to the exclusion of *any* court, state or federal. If not, as under *Garmon*, the state court is the proper forum. Thus, we conclude that the case at hand must be analyzed under the third type of preemption, rather than the second, which the district judge used here.

■ The RLA creates a mandatory administrative grievance procedure for the resolution of minor disputes. These procedures are exclusive, and "RLA preemption divests the state and federal courts of subject matter jurisdiction over 'minor disputes.'" *Leu v. Norfolk & Western Ry.*

*Co.*, 820 F.2d 825, 828 (7th Cir.1987). Minor disputes, those which involve interpretation of the collective bargaining agreement, are to be resolved by the Board and not by the courts. *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978); *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In short, "[f]ederal courts do not have jurisdiction to resolve minor disputes." *Int'l. Ass'n. of Machinists and Aerospace Workers v. Alaska Airlines Inc.*, 813 F.2d 1038, 1040 (9th Cir.1987). "[T]he exclusive forum for minor disputes arising out of a railroad employment relationship is the Railway Adjustment Board." *Minehart v. Louisville & Nashville R.R. Co.*, 731 F.2d 342, 345 (6th Cir.1984) (per curiam).

The Supreme Court has recently dealt with the problems of choice of forum preemption in the context of the Railway Labor Act:

> The statutory procedures for resolving "major disputes"—those arising "out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions,"—are not relevant to this case. The "minor dispute" provisions are relevant, however, because the railroad argues that the underlying dangerous condition in this case could have been grieved as a minor dispute—one "growing out of grievances or out of the interpretation of agreements concerning rates of pay, rules, or working conditions," 45 U.S.C. § 153 First (i). Minor disputes initially must be dealt with through a railroad's internal dispute resolution processes, and if not settled there, may be submitted to a division of the Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties. Judicial review of these Boards' determinations has been characterized as "among the narrowest known to the law." (citation omitted).

*Atchison, T. & S.F. Ry. Co. v. Buell*, — U.S. —, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987). Assuming that the plaintiff's state law defamation claim could not avoid

by artful pleading what was really a minor dispute under the Railway Labor Act, the district court erred in dismissing the claim on the merits. At a minimum, therefore, the trial judge's second opinion erred because it failed to realize that the preemption in this case was not merely cause of action preemption, (which might justify removal to the federal courts) but was instead choice of forum preemption. Thus, even if state courts were precluded from hearing this claim on its merits, so were the federal courts. The merits of the defamation claim, even under the assumption the district court made regarding artful pleading, were to be exclusively determined by the public law board.

The cases which the trial judge relied upon in his first opinion finding subject matter jurisdiction, do not in our view, justify the court's reaching the merits of the dispute. Although the cases cited did find that there was federal jurisdiction, they dismissed the claims for want of subject matter jurisdiction because the state claims could not avoid by artful pleading what were really minor disputes solely within the jurisdiction of the NRAB. *See Beers v. Southern Pacific Transp. Co.,* 703 F.2d 425 (9th Cir.1983); *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.1978); *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853 (D.Md.1981); *Carson v. Southern Ry. Co.,* 494 F.Supp. 1104 (D.S.C.1979). These cases are distinguishable for other reasons which we discuss later, but they certainly do not in any event support reaching the merits of the defamation claim, even assuming that the artful pleading doctrine applies to this case.

Having held this much, we are then obliged to determine whether the trial judge was correct in his first opinion, i.e., whether federal jurisdiction is appropriate because this case could not have been brought in state court. This depends in turn upon issues of federal question jurisdiction and also upon issues of removal jurisdiction. There are thus two possible sources of federal jurisdiction over this claim. First, in an argument not relied on by the district court, (although raised by the defendant) it is possible that federal jurisdiction could be sustained based on the reference in the complaint to 49 U.S.C. § 11347. Because the plaintiff says that his reference to section 11347 is included in the complaint for no other reason than to show the evil intent and motive of the defendant in discharging him and libeling him, it is at least arguable that this allegation, so construed, would not invoke federal question jurisdiction. On the other hand, we do not believe the law necessarily permits a plaintiff to treat an allegation of a federal statute as surplusage, as Miller did in his pleadings in the district court, merely because he wishes to defeat removal jurisdiction.

Nonetheless, Miller asserts that the defendant violated his rights under section 11347, not as an independent cause of action, but only as a component of his state defamation claim. Therefore, this case presents the following jurisdictional problem: When does a state cause of action containing as an element a violation of a federal statute create a claim "arising under the laws of the United States"? The Supreme Court in *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* —— U.S. ——, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), held that such a cause of action does not create "arising under" jurisdiction as a substantial federal question if the federal statute does not provide for a private right of action, either express or implied. Our circuit has earlier held that a private right of action is permitted by section 11347. *Modin v. New York Central Co.,* 650 F.2d 829 (6th Cir.1981). However, as footnote 12 of *Merrell Dow* indicates, a finding of an express or implied private right of action is a necessary but not a sufficient indication that the federal question is a substantial one. Rather, even when there is such a cause of action, the use of a federal statute as an element of a state cause of action may or may not raise a substantial federal question depending upon the nature of the federal interest at stake in the case. *See* 106 S.Ct. at 3236 n. 12. In that footnote, the Court tried to reconcile two seemingly contradictory Supreme Court cases, *Smith v. Kansas City Title & Trust Co.,* 255 U.S.

180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), and *Moore v. Chesapeake & Ohio Ry.*, 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934). In the first of these cases, federal question jurisdiction was found, and the Supreme Court in *Merrell Dow v. Thompson* said that this was because the federal issue on which that case turned was the constitutionality of the federal statute. By contrast, the Supreme Court in *Moore* found that the federal statute in that state cause of action did not create arising under jurisdiction because the nature of the federal interest in that case was merely that the statute be interpreted and applied in a private personal injury action. Thus, in this case, as in *Moore*, the interpretation of section 11347 would be implicated only in that it would be construed in a private personal injury action. Accordingly, we conclude that mention of section 11347 is not sufficient to create a federal question of sufficient substance to create arising under jurisdiction. Thus, federal jurisdiction here cannot be predicated upon section 11347.

Even if such jurisdiction could be founded on section 11347, the district court still would have erred in determining the merits of the defamation claim. If the section 11347 claim is nothing more than a claim that the plaintiff was discharged in violation of his rights under that section, which it apparently must be, then contrary to what the plaintiff says, the district court would have had to have given collateral estoppel effect to the determination of the public law board that the plaintiff was discharged because he had participated in the scam. "A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. He is limited to the judicial review of the Board's proceedings that the Act itself provides. In such a case the proceedings afforded by 45 U.S.C. § 153 First (i) will be the only remedy available to the aggrieved party." *Andrews, supra*, 406 U.S. at 325, 92 S.Ct. at 1565 (citation omitted). Accordingly, the district court would have dismissed the federal claim before trial. In that situation, the district court could not exercise pen-

dent jurisdiction over the defamation claim, and could not decide it upon the merits. While the facts giving rise to the defamation, such as where the defamation occurred, are not clear, there are only two possibilities: either the defamation claim and section 11347 claim "derive from a common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), or they do not. If they do, the federal claim should have been dismissed prior to trial, and *Gibbs* would mandate that the state claim be dismissed for lack of subject matter jurisdiction. If they did not derive from the same common nucleus of operative fact, the district court would not have pendent jurisdiction over the defamation claim in any case.

The foregoing discussion suggests that the only other basis for sustaining federal jurisdiction would be removal based on whether the claim, though couched in terms of state defamation law invokes the mandatory and preemptive federal question jurisdiction of 45 U.S.C. § 153 First (i). Inevitably allied to this issue is whether removal jurisdiction based on the presence of a federal question is also permissible. This in our view turns on the same analysis as whether there was original federal question jurisdiction created by the complaint. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

> Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal question jurisdiction is required. The presence or absence of federal question jurisdiction is governed by the "well pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint.... Thus, it is now settled that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *See Franchise Tax Board, supra,* 463 U.S. at 12, 103 S.Ct. at 2847–48.

There does exist, however, an "independent corollary" to the well pleaded complaint rule, *id.* at 22, 103 S.Ct., at 2853, known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well pleaded complaint rule. *Metropolitan Life Insurance Co.* [*v. Taylor,* — U.S. —, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)]. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *See Franchise Tax Board, supra,* 463 U.S. at 24, 103 S.Ct., at 2854 ("[I]f a federal cause of action completely pre-empts a State cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.")

The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by section 301 of the LMRA.... In *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Court decided that "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts." 376 F.2d 337, 340 (CA6 1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). We held that when "[t]he heart of the [state law] complaint [is] a ... clause in the collective bargaining agreement," *id.* at 558,

88 S.Ct., at 1236, that complaint arises under federal law:

> "[T]he preemptive force of section 301 is so powerful as to displace entirely any state cause of action for 'violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of section 301." *Franchise Tax Board, supra,* 463 U.S. at 23, 103 S.Ct., at 2853–2854.

*Caterpillar Inc. v. Williams,* — U.S. —, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987) (footnotes omitted).

Here we are satisfied that there would not be federal jurisdiction under the "well pleaded" complaint rule, for the complaint does not indicate that there is any Railway Labor Act claim, and the Railway Labor Act is raised only as a defense by the defendant. Nonetheless, *Avco* is an LMRA case, and many courts consider the LMRA cases to be useful in deciding RLA preemption questions. *See Leu v. Norfolk & Western Ry. Co., supra.* If *Avco* does apply to RLA cases, how can a court tell whether in any particular case the *Franchise Tax Board* well pleaded complaint rule applies, or the *Avco* complete preemption rule governs? Again, *Caterpillar Inc. v. Williams* supplies the answer:

> Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." *Electrical Workers v. Hechler,* [— U.S. —, 107 S.Ct. 2161, 2166–67] n. 3 [95 L.Ed.2d 791] (1987); *see also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). Respondents allege that Caterpillar has entered into and breached *individual* employment contracts with them. Section 301 says nothing about the content or validity of individual or employment contracts. It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under

section 301. As masters of the complaint, however, they chose not to do so.

Moreover, contrary to Caterpillar's assertion, ... respondents' complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address the relationship between the individual contracts and the collective agreement. As the Court has stated, "it would be inconsistent with congressional intent under [section 301] to pre-empt state rules that prescribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers Corp., supra* [471 U.S.] at 212 [105 S.Ct. at 1912].

107 S.Ct. at 2431.

█ We conclude that both parties and the district court are in error regarding whether the defamation claim is "substantially dependent upon analysis of a collective bargaining agreement." Plaintiff errs when he argues that because he seeks different relief for his defamation claim than he sought in the action before the public law board the "well pleaded complaint" rule protects him from removal as the master of his complaint. Whether the state cause of action provides a remedy that the federal statute does not provide is immaterial under *Caterpillar Inc.*, 107 S.Ct. at 2429 n. 4. The defendant and district court err in asserting that merely because the plaintiff was covered by a collective bargaining agreement, any conceivable claim that he might raise under state law regarding his employment is inevitably preempted by the RLA:

> [I]ndividual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. Caterpiller's basic error is its failure to recognize that a plaintiff covered by a collective bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state law contract rights, so long as the contract relied upon is *not* a collective bar-

gaining agreement. *See Allis–Chalmers, supra.*

Section 301 does not, as Caterpiller suggests, require that all "employment-related matters involving unionized employees" be resolved through collective bargaining amd thus be governed by a federal common law created by section 301.... The Court has stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by section 301 or other provisions of the federal labor law." *Allis–Chalmers*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). Claims bearing no relationship to a collective bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not preempted by section 301.... Caterpillar impermissibly attempts to create the prerequisites to removal by ignoring the set of facts (*i.e.*, the individual employment contracts) presented by respondents, along with their legal characterization of those facts, and arguing [sic] that there are different facts respondents might have alleged that would have constituted a federal claim. In sum, Caterpillar does not seek to point out that the contract relied upon by respondents is in fact a collective agreement; rather it attempts to justify removal on the basis of facts not alleged in the complaint. The "artful pleading" doctrine cannot be invoked in such circumstances.

*Id.* at 2431–32 & n. 10 (additional footnote omitted). The cases that the trial judge relied upon do no more than apply *Avco* to situations where it is clear that resolution of the state claim will require application or interpretation of the collective bargaining agreement. It is in that sense that the state claim is considered to be inextricably intertwined with the matrix of the federal labor law. Here, by contrast, there is no evidence whatever that the defamation claim can be resolved only by referring to the collective bargaining agreement. Nothing in the record indicates that the defamation claim is not independent from

the wrongful discharge action brought before the public law board. We are not even favored with a copy of the collective bargaining agreement to see whether the defamation claim would require such an interpretation.

It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a section 301 question in a defensive argument does not overcome the paramount policies embodied in the well pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, chose to have the cause heard in state court. When a plaintiff invokes a right created by a collective bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.

*Id.* at 2433 (footnote omitted).

Finally, it should be noted that even if the *Avco* exception might otherwise apply to this case, the defamation action is almost certainly not one which would necessarily be preempted because its resolution would involve interpretation of the collective bargaining agreement. While the plaintiff cannot evade the exclusive jurisdiction of the NRAB by recharacterizing a minor dispute as a state cause of action, *Stephens v. Norfolk & Western Ry. Co.*, 792 F.2d 576, 581 (6th Cir.1986), the Supreme Court has held that a malicious defamation action brought by a worker covered by a collective bargaining agreement is not one which would be preempted by federal labor law. Thus, the defamation action would not be

one which would be within the exclusive jurisdiction of the public law board. Federal labor law recognizes that there would not be preemption of state court actions based upon deeply rooted local concerns. *Garmon, supra; Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966):

> [T]he States need not yield jurisdiction 'where the activity regulated was merely a peripheral concern of the Labor Management Relations Act ... [o]r where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.'

*Linn,* 383 U.S. at 59, 86 S.Ct. at 661, *quoting Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79. In *Linn,* the Court held that "where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court does have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him." *Id.,* 359 U.S. at 55, 86 S.Ct. at 659. The definition of malice that the Court used was that the "libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false." *Id.* at 60–61, 86 S.Ct. at 661–662. Proceeding with the defamation action would pose little risk of interferring with the administration of national labor policy. While the NLRB would determine whether the statements were misleading or coercive, and not defamatory, the state court action was unconcerned whether the statement was coercive or misleading. *Id.* at 63–64, 86 S.Ct. at 663–664. Here, the public law board determined whether Miller was fired for cause stemming from the scheme, but did not decide a possibly independent defamation claim. There is nothing in the record which indicates that "resolution of [Miller's] state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, ... [to be] treated as a section 301 claim, *see Avco Corp. v.*

*Aero Lodge 735,* 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968)...." *Allis–Chalmers v. Lueck, supra,* 471 U.S. at 220, 105 S.Ct. at 1916.

As the Supreme Court noted in *Caterpillar v. Williams,* not every state law claim raised by someone asserting rights under the collective bargaining agreement will be preempted if the claim itself is independent of the collective bargaining agreement. In this case, the record does not indicate that the defamation that allegedly occurred here happened during the hearings before the Board. It could have been made on television or on the radio, or printed in newspapers or leaflets or spoken verbally at any time by the defendant. There is no indication that these defamation claims arise from a railroad employee discipline dispute. There is nothing in the record that indicates that resolving the defamation claim would concern application or interpretation of an agreement between the employees and the employer governed by the RLA, *contra McKinney v. Int'l. Ass'n. of Machinists,* 624 F.2d 745 (6th Cir.1980). It may be that the only statements which are the subject of the defamation action are those which require application and interpretation of the CBA. But if that occurs, the proper procedure is not for the federal court to remove the case and to decide it on the merits, but to transfer the case to the exclusive jurisdiction of the public law board, as the cases Judge Lambros cited did. If the defamation claim is independent of the CBA, then remand to the state court under 28 U.S.C. § 1441(c) is required.

On this record, in the state court action that Miller filed, Norfolk & Western would not have to show that Miller was discharged for stealing or other just cause under the collective bargaining agreement, as it had before the public law board. Rather, N & W would only have to prove that it did not defame him. The defendant would not be able to claim collateral estoppel as a defense in state court for any allegedly libelous statements made during the course of the investigation and for the alleged breach of the collective bargaining agreement, as the resolution of these issues would lie exclusively in the public law board. Collateral estoppel based on the previous public law board determination would be a defense as to any other allegedly defamatory statements over which the state court could properly exercise jurisdiction. The state court would not even need to look to the collective bargaining agreement to resolve that question. Even if the defamation claim concerned statements made outside the grievance resolution process whose content was identical to those that the public law board says were true, that goes to collateral estoppel, and not to interpretation of the collective bargaining agreement. The state court might never reach the interpretation of the collective bargaining agreement because it, rather than the district court in that situation, would properly dismiss Miller's complaint on the merits based on the effect of collateral estoppel from the public law board's interpretation.

To summarize, we reverse the judgment of the district court and remand for a determination whether resolution of plaintiff's libel claim would necessitate interpretation of the CBA. Diversity jurisdiction was not raised in the removal petition, and cannot now sustain federal jurisdiction. The reference in plaintiff's complaint to 49 U.S.C. § 11347 does not provide a basis for federal question jurisdiction. Under *Merrell Dow Pharmaceuticals v. Thompson,* the reference to this federal claim within the state libel claim would not produce "arising under" federal question jurisdiction. Therefore, there would be no federal jurisdiction upon which to base any pendent state claims. Even if such a reference did produce the federal question jurisdiction, there still would have to be pendent jurisdiction before the district court could decide the defamation claim. However, this claim could not be pendent to the 11347 claim because the 11347 claim already would have been dismissed before trial on the merits for reasons we have earlier discussed. We further note that since the defamation claim itself is not clearly established as to time and place, it is quite possible that the defamation claim would

**568**

not even arise out of the same common nucleus of operative facts, and that the district court would not have jurisdiction over that defamation claim in any event.

Alternatively, we cannot at this juncture determine whether the complaint raises a claim which would produce "arising under" jurisdiction under the Railway Labor Act. What the plaintiff has pleaded amounts to a well pleaded state claim of defamation, *see Franchise Tax Board.* Ordinarily, of course, that would mean that federal question jurisdiction could not be based on any preemption claim, even if preemption is the only issue in the case. *Id.* There is, however, the *Avco* exception of complete preemption, which we have earlier mentioned holds that there are some circumstances in which the claim would be so completely dependent upon resolution of terms of the collective bargaining agreement that the plaintiff's complaint will be treated as if he had pleaded a claim arising under federal law, subject to removal at defendant's option. Here however, there is nothing in the record to indicate that the defamation claim is something whose resolution would in fact require interpretation of the collective bargaining agreement. Finally, even if the *Avco* exception did apply, and there was federal jurisdiction because the defamation claim was nothing more than a wrongful discharge action, the district court still would have to dismiss the complaint for lack of jurisdiction, because then the exclusive forum that would preempt the plaintiff's minor dispute claim would be the public law board, and not the federal courts.

Therefore, we remand for a determination regarding whether the proper forum for the case is state court or the public law board. The appropriate forum will depend on whether the alleged defamatory statements relied upon in plaintiff's complaint are inextricably intertwined with the CBA. The record as it now stands does not resolve this question. The mere fact that Miller invoked his rights under the CBA is insufficient to determine conclusively that they are so intertwined. If some of the statements require CBA application and others do not, then jurisdiction would lie in the state court to resolve those statements that are not inextricably intertwined and in the public law board to resolve those that are. In no event may the district court decide the case on the merits, as it lacks jurisdiction to do so, whatever the result of the inquiry on remand.

REVERSED amd REMANDED for further proceedings consistent with this opinion.