**Pamela SPEARS, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC.,
and Lori Goff, Defendants.**

**No. 92–CV–71666–DT.**

United States District Court,
E.D. Michigan, S.D.

July 13, 1992.

James C. Barnes, Southfield, Mich., for plaintiff.

Donna J. Donati, Detroit, Mich., for defendants.

## OPINION

DUGGAN, District Judge.

This matter is before the Court on plaintiff Pamela Spears' motion to remand. The issue presented is whether plaintiff's race discrimination claim, filed pursuant to the Michigan Elliott–Larsen Civil Rights Act (the "Elliott–Larsen Act"), M.C.L. §§ 37.-2101 *et seq.*, is preempted by the Railway Labor Act (the "RLA"), 45 U.S.C. §§ 151 *et seq.* Upon review of the pleadings submitted in support of and in opposition to plaintiff's motion, and having had the benefit of oral argument from counsel, the Court concludes plaintiff's race discrimination claim is not preempted by the RLA.

### I.

Plaintiff, a black female, was formerly employed by defendant Northwest Airlines. Her employment was governed by a collective bargaining agreement (CBA) between the International Association of Machinists and Aerospace Workers and Northwest. Plaintiff was terminated in October of 1990. On November 21, 1991, plaintiff filed a one count complaint in Wayne Coun-

ty Circuit Court against Northwest and her former supervisor, defendant Lori Goff, alleging violations of the Michigan Handicappers' Civil Rights Act, M.C.L. §§ 37.1101 *et seq.* Plaintiff subsequently amended her complaint, adding a race discrimination claim under the Elliott–Larsen Act. To establish defendants' liability under the Elliott–Larsen Act, plaintiff alleges that Northwest's attendance policy was applied in a discriminatory manner, and that as a result she was disciplined and ultimately discharged while other similarly situated white employees were not. Plaintiff's complaint omits any reference to the CBA, relying solely on state law in framing her discrimination claim.

### II.

Section 1441(b) of Title 28 permits defendants to remove "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States...." 28 U.S.C. § 1441(b). "The party seeking removal bears the burden of establishing its right thereto." *Her Majesty The Queen of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989) (citation omitted). Defendants removed this case asserting that this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff's race discrimination claim is preempted by the RLA.

■ Once removed, "[i]f it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983) (citing 28 U.S.C. § 1447(c)). Relying primarily on *Colorado Anti–Discrimination Comm'n v. Continental Air Lines, Inc.,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963), plaintiff seeks remand arguing that the RLA does not preempt her race discrimination claim.

**438**

In opposing remand, defendants argue that plaintiff's discrimination claim is a "minor dispute" under the RLA, and therefore, within the exclusive jurisdiction of the National Railroad Adjustment Board (NRAB).[1] Alternatively, relying upon decisions dealing with preemption under section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, defendants contend that the collective bargaining agreement is "inextricably intertwined" with plaintiff's race discrimination claim and therefore, such claim is preempted by the RLA.[2]

Neither party brought to the Court's attention any published decision in the Sixth Circuit dealing with RLA preemption of a race discrimination arising under a state statute. The Court, however, is aware of two unpublished opinions in this Circuit dealing with this issue. *See Higgins v. Newhouse*, Nos. 89–2099, 89–2133, 1990 WL 127551, 1990 U.S.App.LEXIS 15772 (6th Cir. Sept. 6, 1990) (per curiam) [914 F.2d 256 (table)]; and *Moore v. Northwest Airlines, Inc.*, No. 89–1074, 1989 U.S.Dist. LEXIS 18008 (E.D.Mich. Dec. 4, 1989) (Suhrheinrich, J.). While not controlling, the Court finds the facts in the instant case to be strikingly similar to those in *Higgins* and *Moore*, and the unpublished opinions noteworthy.

In *Higgins*, plaintiff brought suit against Northwest Airlines and individual defendants claiming, among other things, that she was discriminated in her employment with Northwest because of her race. Her complaint also contained claims of libel, slander, interference with employment, as-

sault and battery, which the district court concluded were "minor disputes" under the RLA, and thus preempted. The district court, however, concluded that the race discrimination claim was not preempted. Affirming the district court's decision, the Sixth Circuit stated:

> Defendant argues that Higgins' race discrimination claim is also preempted by the RLA. The district court stated that this argument was "without merit," relying on *Colorado Anti–Discrimination Comm'n.* We agree with the district court that because plaintiff's race discrimination claim does not involve interpretation of the CBA, this charge is not preempted by the RLA.

*Higgins*, 1990 WL 127551, at *3, 1990 U.S.App. LEXIS 15772, at *10 (citation omitted).

In *Moore*, plaintiff filed suit against Northwest Airlines alleging its attendance policy was applied in a discriminatory manner, and that he was retaliatorily discharged in violation of the Elliott–Larsen Act and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* Rejecting Northwest's argument that plaintiff's Elliott–Larsen claim was preempted by the RLA, Judge Suhrheinrich reasoned:

> A state law claim is preempted where its resolution depends upon the interpretation of a CBA. The Supreme Court has stated that retaliatory discharge claims involve purely factual questions pertaining to the conduct of employees and conduct and motivation of the employer, and as such does (sic) not require a court to interpret a CBA. Defendant claims that the general anti-discrimina-

---

**1.** Minor disputes under the RLA are those which involve interpretation of a collective bargaining agreement. *Miller v. Norfolk & Western Ry.*, 834 F.2d 556, 561 (6th Cir.1987). Congress has created a mandatory grievance procedure for the resolution of minor disputes, vesting exclusive jurisdiction in the NRAB. *Id.* Thus, RLA preemption divests the state and federal courts of subject matter jurisdiction over minor disputes. It follows that if plaintiff's race discrimination claim is characterized as a minor dispute, her exclusive remedy is under the RLA in an action before the NRAB. *See Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

**2.** Recognizing that many courts consider the LMRA cases to be useful in deciding RLA pre-

emption questions, the Sixth Circuit has relied upon LMRA cases in its decisions dealing with RLA preemption. *See Miller*, 834 F.2d at 564; *Beard v. Carrollton R.R.*, 893 F.2d 117 (6th Cir. 1989); *McCall v. Chesapeake & Ohio Ry.*, 844 F.2d 294, 298 (6th Cir.), *cert. denied*, 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). While defendants have framed this argument as an alternative basis for finding preemption, if the Court were to conclude plaintiff's race discrimination claim was "inextricably intertwined" with the CBA, plaintiff's claim would be a minor dispute, and her exclusive remedy would be under the RLA. *See Miller*, 834 F.2d at 568.

tion clause in the CBA automatically preempts state discrimination suits.

The United States Supreme Court, however, has rejected this interpretation of CBAs. "[T]he mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." Plaintiff's state law claims are clearly not barred by the Railway Labor Act.

*Moore,* 1989 U.S.Dist. LEXIS 18008, at * 8–9 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 412–13, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988); footnote omitted).

Two Sixth Circuit decisions addressing RLA preemption of state law claims, *Miller v. Norfolk & Western Ry.,* 834 F.2d 556 (6th Cir.1987), and *Beard v. Carrollton R.R.,* 893 F.2d 117 (6th Cir.1989), are also instructive. In *Miller,* the Sixth Circuit discussed preemption law in a case involving a state law defamation claim removed to federal court on the basis of RLA preemption. Like the case at bar, plaintiff in *Miller* had not invoked the RLA; however, the district court held removal was proper and ultimately dismissed the action on the merits. The Sixth Circuit reversed concluding that the district court lacked jurisdiction over the case. The Court reasoned that if plaintiff's defamation claim involved interpretation of the collective bargaining agreement, *i.e.* it was inextricably intertwined with the CBA, it would be a "minor dispute" and the exclusive jurisdiction of the dispute would rest with the NRAB. If the defamation claim did not require interpretation of the collective bargaining agreement, then there would be no preemption and jurisdiction would be in the state court, not the federal court. In either situation, the federal court was without jurisdiction to hear the claim. *Miller,* 834 F.2d at 568.

In *Beard v. Carrollton, supra,* the Court held that two state law tort claims were within the exclusive jurisdiction of the NRAB, and therefore preempted by the RLA. Finding the Supreme Court's decision in *Lingle v. Norge Div. of Magic Chef,* instructive, the Court reasoned: "state causes of action are not preempted if 'resolution of the state-law claim does not require construing the collective-bargaining agreement.'" *Beard,* 893 F.2d at 122 (quoting *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882). The Court then determined that adjudication of plaintiff's tort claims would require interpretation of the CBA:

> In the case at bar it seems to us that adjudication of the tort claims would require interpretation of the collective bargaining agreement. The first of the tort claims is for wrongful interference with contract. This claim would require interpretation of the collective bargaining agreement because Kentucky makes breach of contract an essential element of the tort. The second of the tort claims involves the intentional infliction of emotional distress, an area in which Kentucky follows the Restatement (Second) of Torts, § 46. The Restatement provides that the actor is not liable "where he has done no more than to insist upon his legal rights in a permissible way." A determination of the railroad's "legal rights" would require the court to resort to the provisions of the collective bargaining agreement.

*Id.* (citations omitted).

The Court also finds instructive the Sixth Circuit's decisions in *McCall v. Chesapeake & Ohio Ry.,* 844 F.2d 294, 298 (6th Cir. 1988); *Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir.) (en banc), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989); and *O'Shea v. Detroit News,* 887 F.2d 683 (6th Cir.1989). The *McCall* Court held plaintiff's handicap discrimination claim to be preempted by the RLA. The Court, however, expressly limited its holding to the facts of the case, noting that it *was not* holding that the Handicappers' Act was preempted by the RLA in all cases. *McCall,* 844 F.2d at 303. The *Smolarek* and *O'Shea* Courts held that section 301 of the LMRA did not preempt claims filed under the Michigan Handicappers' Act. *Smolarek,* 879 F.2d at 1335; *O'Shea,* 887

F.2d at 687. The *O'Shea* Court also held that plaintiff's Elliott–Larsen age discrimination claim[3] was not preempted by section 301, reasoning:

[T]he right not to be discriminated against in employment decisions based on ... age is independent of the question of whether O'Shea was demoted or not. The plaintiff in this case may try to show, for example, that the midnight shift was undesirable and that older ... employees were assigned to it more often than younger ... ones. The defendant could then defend by arguing that it had the right to transfer its employees in order to improve its paper, just as the defendants in *Lingle* and *Smolarek* could argue that they had good cause to fire their employees there. The point is that Michigan employees have the right not to be discriminated against on the basis of age ... without regard to the collective bargaining agreement's language about an employee's rights. The discrimination claims are therefore not preempted.

*O'Shea,* 887 F.2d at 687.

■ This Court is aware that the Supreme Court has stated that the preemptive effect of the RLA "is if anything stronger ... than it is in cases arising under § 301 of the LMRA." *Andrews,* 406 U.S. at 323, 92 S.Ct. at 1565. However, this Court believes that the Supreme Court's decision in *Colorado Anti-Discrimination Comm'n,* and the Sixth Circuit's observation in *McCall* that a state statute regulating racial discrimination governs conduct "that is not by any construction a subject for collective bargaining and arbitration," *McCall,* 844 F.2d at 302, demonstrate that the RLA does not represent a *per se* rule of preemption as to claims of racial discrimination premised upon state statutes. In fact, these decisions arguably support a conclusion that racial discrimination claims are not preempted by the RLA. At least one other district court has also come to this conclusion.

In *Underwood v. Trans World Airlines, Inc.,* 710 F.Supp. 78 (S.D.N.Y.1989), the district court recognized:

that the preemptive force of the RLA is not all-encompassing. Certain state regulations of discrimination based upon status (*i.e.,* race, religion, national origin, handicap) have been held to protect independent substantive rights arising under state law notwithstanding the remedies required by the RLA.

\* \* \* \* \* \*

In other words, "[a]n employer cannot simply hide behind the arbitration provisions of a collective bargaining agreement to bypass his or her employee's statutory right not to be discriminated against." Therefore, to avoid the preemptive force of the RLA, plaintiff would have to show that she was being deprived of one of her guaranteed substantive rights protected by a state anti-discrimination statute, here the New York HRL. While plaintiff has attempted to make this showing, she has failed to prove that she is within the class of persons protected by New York's Human Rights Law.

*Id.* at 83 (citing *Colorado Anti-Discrimination Comm'n,* 372 U.S. at 724, 83 S.Ct. at 1027; and quoting *McCall,* 844 F.2d at 300).

In *Colorado Anti-Discrimination Comm'n,* the Supreme Court made clear that the RLA was not intended by Congress to bar state legislation in the field of employment discrimination. After discussing why the Federal Aviation Act of 1958 did not bar such legislation, the Court stated:

There is even less reason to say that Congress, in passing the Railway Labor Act and making certain of its provisions applicable to air carriers, intended to bar States from protecting employees against racial discrimination.... Nothing in the Railway Labor Act or in our cases suggests that the Act places upon

---

**3.** Count II of the complaint was an Elliott–Larsen age discrimination claim. *O'Shea v. Detroit News,* No. 85–72685, 1987 U.S.Dist. LEXIS 15507, \*1 (E.D.Mich. Sept. 22, 1987) (Diggs–Taylor, J.).

an air carrier a duty to engage only in fair nondiscriminatory hiring practices. The Act has never been used for that purpose, and we cannot hold it bars Colorado's Anti–Discrimination Act.

*Colorado Anti–Discrimination Comm'n,* 372 U.S. at 724, 83 S.Ct. at 1027.

### III.

In light of the foregoing discussion, the Court concludes that in bringing her race discrimination claim under the Elliott–Larsen Act, plaintiff seeks to vindicate rights which are independent of the collective bargaining agreement. This Court believes it would be inconsistent with congressional intent under the RLA to preempt state rules that prescribe conduct, or establish rights and obligations, independent of a labor contract. *See Miller,* 834 F.2d at 565 (citation omitted). Under Michigan law, to establish a claim of racial discrimination under the Elliott–Larsen Act,

> plaintiff must prove ... that she was a member of a class entitled to protection under the act and that, for the same or similar conduct, she was treated differently than one who was a member of a different race.... Once proven, the burden shifts to defendants to articulate some nondiscriminatory reasons for the [treatment]. If defendants are able to meet this burden, plaintiff must have the chance to prove that the reasons offered by defendants were a pretext for discrimination.

*Walker v. Consolidated Rail Corp.,* 178 Mich.App. 451, 456, 444 N.W.2d 199 (1989) (citation omitted) (holding plaintiff's Elliott–Larsen race discrimination claim was not preempted by the RLA), *appeal denied,* 434 Mich. 908 (1990).

In the instant action, plaintiff, an African American, is within a class of persons protected by the Elliott–Larsen Act. She alleges that Northwest's attendance policy was applied in a discriminatory manner; and that as a result she was disciplined and ultimately discharged while other similarly situated white employees were not. These allegations raise purely factual questions pertaining to the conduct of the employees and defendants' motivations. Defendants may argue from a defensive posture that they had the right to discipline and ultimately discharge plaintiff given Northwest's attendance policies, part of which may well be contained in a CBA. However, plaintiff's race discrimination claim does not stem from the CBA; nor is adjudication of her discrimination claim substantially dependent upon analysis of the terms of the CBA. The Court finds the Supreme Court's observation in the context of the LMRA to be fitting: "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by ... provisions of the federal labor law." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). In this Court's opinion, plaintiff's claim does not represent a "minor dispute" under the RLA, and the proper forum for this action is the state court.[4]

### IV.

For the reasons set forth above, the Court concludes that plaintiff's Elliott–Larsen race discrimination claim is not preempted by the RLA. Plaintiff's motion to remand shall be granted. An order consistent with this Opinion shall issue forthwith.

---

**4.** As previously noted, if this Court were to conclude (which it has not) that defendants are correct in arguing that plaintiff's discrimination claim was inextricably intertwined with the CBA, *i.e.,* her claim is a minor dispute, then the exclusive forum that would preempt her claim would be the NRAB. Contrary to defendants' contention, this Court would not have had jurisdiction over this action, and removal would have been improper. *See Miller,* 834 F.2d at 568.