**Joseph C. STEPHENS,**
**Plaintiff-Appellant,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, a Virginia corporation,**
**Defendant-Appellee.**

No. 85–1226.

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1986.

Decided June 9, 1986.

---

Marilyn A. Madorsky (argued), Provizer, Eisenberg, Lichtenstein & Pearlman, P.C., Southfield, Mich., for plaintiff-appellant.

Carson C. Grunewald (argued), Bodman, Longley & Dahling, Detroit, Mich., for defendant-appellee.

Before KEITH and MARTIN, Circuit Judges and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Plaintiff-Appellant Joseph C. Stephens appeals from the judgment of the United States District Court for the Eastern District of Michigan, DeMascio, J., granting defendant-appellee Norfolk and Western Railway Company's Motion for Summary Judgment, dismissing appellant's claim of violations by appellee of the Michigan Handicapper's Civil Rights Act, Mich.

Comp.Laws § 37.1101 *et seq.* For the reasons set forth herein, we affirm the district court's grant of the Motion for Summary Judgment.

## I.

Defendant-Appellee, Norfolk and Western Railway Company, (N & W Railway) employed plaintiff-appellant, Joseph C. Stephens, since April, 1962. At the time this controversy arose, Stephens served as a railroad switchman. On January 15, 1981, N & W Railway conducted a formal investigation hearing against Stephens charging neglect of duty. on January 23, 1981, N & W Railway dismissed Stephens from their employ. Utilizing grievance procedures available in the existing collective bargaining agreement, United Transportation Union appealed Stephens' dismissal to Public Law Board No. 912.[1] Award No. 586 of Public Law Board 912 reinstated Stephens to N & W Railway employment with seniority and all other rights unimpaired, but without back pay.

On February 12, 1982, N & W Railway required Stephens to report for a physical examination as a condition to reinstatement. On February 19, 1982, Stephens underwent a physical examination by Dr. Lichter, N & W Railway's designated physician. On March 29, 1982, N & W Railway notified Stephens of his disqualification from all service with them. N & W Railway relied on Dr. Lichter's examination of Stephens diagnosing degenerative disc defect and disease at the L4–5 level in Stephens' lower back.[2]

On April 2, 1982, Stephens requested of N & W Railway a physical re-examination by a three doctor panel pursuant to Appendix 49, Article 1, Sections (a) and (b) of the existing collective bargaining agreement. Appendix 49, Article 1, Sections (a) and (b) state in relevant portions:

(a) The employee involved will promptly select a physician to represent him, and the management will promptly select a physician to represent the Carrier. The two physicians thus selected will promptly re-examine the employee and render a report of their findings within a reasonable period. *If the two physicians thus selected shall agree, the conclusion reached by them will be final....*

(b) If the two physicians selected in accordance with Paragraph (a) should disagree as to the physical condition of the employee involved, they will select a third physician, to be agreed upon by them, who shall be of recognized standing in the medical profession....

(emphasis added).

On April 6, 1982, Stephens received a physical examination from his personal physician, Dr. Gary Kuprowski. On April 8, 1982, Dr. Kuprowski corresponded his diagnosis of Stephens to N & W Railway, stating in pertinent part:

An x-ray of the lumbar spine was done which showed: degenerative disc disease, L4–5, joint space narrowing with scoliosis and osteophyte formation.

However, Dr. Kuprowski's diagnosis concluded Stephens was fit for his employment as a railroad switchman despite his degenerative disc disease.[3]

---

1. Pursuant to the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.,* exclusive mandatory jurisdiction is granted to the National Railroad Adjustment Board (NRAB) to determine certain matters arising under the RLA. The Board decision in this case was by a special board of adjustment called a Public Law Board, established in accordance with 45 U.S.C. § 153 Second. The extent and coverage of this exclusive jurisdiction goes to the issue at hand.

2. There is nothing in the record to indicate any allegations by Stephens that his disc defect was a work-related injury.

3. Stephens submitted additional information from subsequent examinations reiterating his fitness for work despite the disc defect: (1) an August 10, 1982 report by Dr. Tom Phillips, Orthopaedic Surgeon, diagnosed disc degeneration but otherwise completely fit for any type of work; (2) an August 25, 1982 report by Dr. George Koppert, Orthopaedic Surgeon, stating Stephens should be working; and (3) an August 27, 1982 report by Dr. Hari Misir, recommending reinstatement of Stephens to his former employment.

On May 3, 1982, N & W Railway denied Stephens' request for a re-examination by a three doctor panel. Relying on Appendix 49, Article 1, Section (a), N & W Railway stated in pertinent part:

Since Dr. Lichter and your personal physician determined that you have a definite physical defect which is considered disqualifying by our railroad, we see no reason for a third doctor's opinion; therefore, your request is denied.

On June 10, 1982, United Transportation Union filed a claim on behalf of Stephens responding to N & W Railway's refusal to submit this case for re-examination by the three doctor panel. The matter proceeded to Public Law Board No. 912. On January 17, 1983, Public Law Board No. 912 denied Stephens' claim for re-examination. The Board concluded in relevant part:

The issue involved herein is whether the Carrier has the right to establish physical standards for its employee and whether the physical standards established herein are reasonable. This referee has had considerable experience concerning physical standards for the back, and it is the opinion of the Board that the Carrier has established a reasonable standard in finding that a discogenic disease of the L4–5 joint of the lumbar spine is disqualifying. Under the circumstances a three doctor panel is not justified and is not required under the agreement.

On August 31, 1983, Stephens filed a Complaint in the United States District Court for the Eastern District of Michigan, Southern Division. The Complaint contained four allegations arising from Stephens' dismissal. On October 17, 1984, N & W Railway filed a Motion for Summary Judgment with the district court. N & W Railway contended the district court lacked subject matter jurisdiction because the RLA vests mandatory and exclusive jurisdiction over employee-employer disputes with the Board. On February 1, 1985, the district court conducted a hearing on this matter. On February 15, 1985, the district court awarded summary judgment for N & W Railway on all counts and dismissed Stephens' Complaint.[4]

On February 21, 1985, Stephens appealed the district court's decision as to Count I of his Complaint only. Count I stated "a cause of action ... [arising] ... in the State of Michigan, under the so-called 'Michigan Handicapper's Act', being MCLA § 37.1201, *et seq.*" Stephens claims on appeal the district court erred in granting N & W Railway summary judgment, because his civil rights claim falls outside the exclusive jurisdiction of the Board.

## II.

This court reviews a grant of summary judgment utilizing the standards applied by the district court. *Glenway Industries, Inc. v. Wheelabrator-Frye, Inc.*, 686 F.2d 415, 417 (6th Cir.1982), *citing Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620 (8th Cir.1981). In this case, summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195 (6th Cir.1974). On appeal, Stephens contends the district court erred in granting summary judgment to N & W Railway as a matter of law.

The RLA promotes stability in labor-management relations by providing effective and efficient remedies for labor disputes, thereby protecting this important national industry.[5] *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402–03, 58 L.Ed.2d 354 (1978). Dis-

---

**4.** The district court failed to issue a written opinion but the Order dismissing his Complaint relied on the exclusive jurisdiction of the NRAB and the failure of the plaintiff's claims to state a cause of action under the Handicapper's Act.

**5.** Two expressed purposes of the RLA entail "provid[ing] for the prompt and orderly settle-

ment of all disputes concerning rates of pay, rules, or working conditions; ... [and] ... provid[ing] for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretations or application of agreements governing rates of pay, rules, or working conditions." 45 U.S.C. § 151a(4) and (5).

putes between employees and Carriers arising "out of the interpretation or application of the collective bargaining agreement ... [are] commonly referred to as 'minor disputes.'" *Kaschak v. Consolidated Rail Corp.*, 707 F.2d 902, 904 (6th Cir.1983). This court classifies a dispute as minor "if the disputed action of one of the parties can 'arguably' be justified by the existing agreement or, in somewhat different statement, if the contention that the labor contract sanctions the disputed action is not 'obviously insubstantial' ..." *Local 1477 United Transportation Union v. Baker*, 482 F.2d 228, 230 (6th Cir.1973); *See also Brotherhood Railway Carmen of the United States & Canada v. Norfolk & Western Railway Co.*, 745 F.2d 370, 375 (6th Cir.1984).

■ When a minor dispute arises, the RLA provides initially for settlement through the contractually agreed upon grievance procedures. 45 U.S.C. § 152 First. Failure to resolve minor disputes through contractual grievance procedures results in the parties submitting to compulsory and binding arbitration by the NRAB or a privately established arbitration panel. 45 U.S.C. § 153 First (i). The Supreme Court and this Circuit have repeatedly held the NRAB has primary and exclusive jurisdiction over minor disputes.[6] *Sheehan*, 439

U.S. at 93–94, 99 S.Ct. at 402–03; *Baker*, 482 F.2d at 230; *Kaschak*, 707 F.2d at 905.

■ Employees' attempts to evade NRAB exclusive jurisdiction over minor disputes by recharacterizing their claims into state causes of action are scrutinized by the following test: If the "action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.," exclusive jurisdiction of the NRAB preempts the action. *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.1978), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).[7] Pursuant to this standard, other Circuits dismiss for lack of subject matter jurisdiction state court claims of reckless or intentional infliction of emotional distress arising directly out of a labor dispute. *See Beers v. Southern Pacific Transportation Co.*, 703 F.2d 425 (9th Cir.1983); *Choate v. Louisville & Nashville Railroad Co.*, 715 F.2d 369 (7th Cir.1983).

On appeal, Stephens contends N & W Railway's employment qualification criteria utilized in his dismissal violates his civil rights as defined by the Michigan Handicapper's Civil Rights Act, Mich.Comp.Laws

6. Minor dispute resolution by the NRAB is judicially reviewable in limited circumstances:

> Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption.

*Sheehan*, 439 U.S. at 93, 99 S.Ct. at 402, *citing* 45 U.S.C. § 153 First (q). Stephens' Complaint fails to allege these grounds as a basis for judicial review of this matter.

Failure to initially utilize the contract grievance procedures or the NRAB results in dismissal of an employee's or Carrier's suit brought directly in district court. *Kaschak*, 707 F.2d at 905, *citing McKinney v. International Association of Machinists*, 624 F.2d 745 (6th Cir.1980); *Baker*, 482 F.2d at 228.

7. Claims by employees concerning alleged wrongful discharge necessarily fall within the ambit of minor disputes. *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 323–24, 92 S.Ct. 1562, 1564–65, 32 L.Ed.2d 95 (1972). As reasoned by the Court in *Andrews*, 406 U.S. at 324, 92 S.Ct. at 1505:

> But the very concept of "wrongful discharge" implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will. Here it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a "wrongful" one that entitles him to damages, is the collective-bargaining agreement between the employer and the union.... The existence and extent of such an obligation in a case such as this will depend on the interpretation of the collective-bargaining agreement.

Further, as stated in *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir. 1978): "Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge."

§ 37.1101 *et seq.* The Handicapper's Act prohibits discrimination based on a handicap unrelated to the worker's ability to perform the duties of a particular job or position. Mich.Comp.Laws § 37.1202. Stephens relies on medical evidence indicating his ability to perform his work despite the uncontested diagnosis of degenerative back disease. Stephens argues since his cause of action arises as a civil rights violation, and not a contractual violation, the district court should take jurisdiction.[8]

■ We reject Stephens' jurisdictional claim premised on alleged violations of the Michigan Handicapper's Civil Rights Act. The collective bargaining agreement covers aspects of the work relationship including N & W Railway's prerogative for setting physical qualifications for employees. N & W Railway legitimately exercised rights granted by the collective bargaining agreement in disqualifying Stephens. Any disagreement with N & W Railway's decision necessarily implies interpretation and application of the collective bargaining agreement. Consequently, Stephens' complaint constitutes a minor dispute subject to primary and exclusive jurisdiction of the NRAB. Stephens availed himself of the contractual grievance procedures culminating in a hearing before Public Law Board No. 912. His current civil rights allegations present a matrix of facts "inextrica-bly intertwined" with the contract grievance proceeding and the RLA.

Based on the preceding reasoning, WE AFFIRM the district court's grant of summary judgment finding lack of jurisdiction to hear Stephens' allegations of civil rights violations.

---

**8.** Stephens attempts to support his position utilizing *Johnson v. American Airlines, Inc.,* 487 F.Supp. 1343 (N.D.Tx.1980). In *Johnson, supra,* plaintiff pilots brought an action with the Equal Employment Opportunity Commission alleging discrimination on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. *Id.* at 1343. American Airline postured their defense on failure to exhaust the applicable collective bargaining agreement remedies and those under the RLA. *Id.* at 1344.

The district court noted that reliance on the ADEA brought two federal statutory schemes into conflict. *Id.* at 1344–45. Reviewing cases where a federal policy of exhaustion collided with Title VII claims, a district court concluded plaintiffs were not seeking to assert a contractual right subject to the NRAB's exclusive jurisdiction. *Id.* at 1345–46. Further, incidental intrusion into interpreting the collective bargaining agreement necessitated by recognizing this separate cause of action does not require plaintiffs to pursue union grievance procedures prior to bringing the ADEA claim. *Id.* at 1346.

However, *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984), distinguishes the district court holding. The *Jackson* Court found that only the interaction of two federal statutory schemes rebutted the exclusive jurisdiction presumption of the RLA. *Id.* at 1050–51. A claim grounded on a state cause of action, even if supported by a federal policy, failed to constitute the requisite specific federal statute. *Id.*

Stephens fails to cite any specific Circuit law supporting his position concerning state action claims. In light of the lack of supporting authority and *Jackson, supra,* we find Stephens' reasoning unpersuasive.