**R. Paul BEARD and Scarlett Beard,
Plaintiffs–Appellees,**

v.

**CARROLLTON RAILROAD and CSX Transportation, Inc., (88–5910); The Travelers and The Travelers Companies, (88–6280), Defendants–Appellants.**

**Nos. 88–5910, 88–6280.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 1, 1989.

Decided Dec. 28, 1989.

Order on Denial of Rehearing
March 2, 1990.

**118**

Ruth Helen Baxter (argued), Carrollton, Ky., for plaintiffs-appellees.

James G. Apple, James D. Moyer (argued), Robert M. Connolly, Stites & Harbison, Louisville, Ky., John David Cole (argued), Elizabeth Y. Downing, Cole, Broder-

ick, Minton, Moore & Thornton, Bowling Green, Ky., for defendants-appellants.

Before WELLFORD and NELSON, Circuit Judges, and TAYLOR, District Judge.*

DAVID A. NELSON, Circuit Judge.

This is an appeal from an order of remand. The action was filed originally in state court, but was removed to the federal district court as a case arising under the Railway Labor Act. After rejecting a suggestion by the plaintiffs that the removal was improper, the district court dismissed the first of the two counts in the complaint because of a failure to exhaust administrative remedies; in light of that determination (which is not challenged here), the court decided that a remand was necessary because dismissal of the first count left the court without jurisdiction to decide the merits of the second.

Under 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State Court from which it was removed is not reviewable on appeal or otherwise...." As construed by the Supreme Court in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), however, § 1447(d) does not bar review by way of mandamus where a case that has been properly removed is remanded for reasons not authorized by statute. This is such a case, in our view. The claims asserted in the second count of the complaint involve the interpretation and application of a health and welfare plan adopted pursuant to a collective bargaining agreement, as we see it, and the claims are therefore not susceptible to adjudication in a state court. Accordingly, we shall direct the district court to vacate the order of remand.

I

Plaintiff R. Paul Beard was employed as a laborer in the maintenance-of-way department of defendant Carrollton Railroad, a wholly owned subsidiary of defendant CSX Transportation, Inc. As an employee of the railroad, Mr. Beard had medical, hospital and life insurance coverage for himself and his dependants under a group policy issued by defendant Travelers. A collective bargaining agreement negotiated un-

---

* The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michi- gan, sitting by designation.

der the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, made such insurance mandatory.

The health and welfare plan in question provided, subject to certain qualifications not in question here, that an employee who was suspended or dismissed from employment would continue to be covered until the end of the fourth month following the month in which the employee last rendered compensated service. An employee who quit voluntarily, on the other hand, would lose his coverage immediately.

Mr. Beard's employment was terminated by the railroad on February 20, 1987. His three-year-old son died of cancer in August of that year, after heavy medical expenses had been incurred. It is alleged that the railroad lied to the insurance company about the circumstances of Mr. Beard's departure, falsely stating that Mr. Beard had quit voluntarily; as a result, the insurance company improperly denied responsibility for medical expenses attributable to the period between February 20 and June 30, 1987.

Mr. Beard and his wife instituted the present action in the Circuit Court of Carroll County, Kentucky, on February 25, 1988. Count one of the complaint alleged that Mr. Beard's employment had been terminated by the railroad, as a result of which he and his dependents were entitled to continuing insurance coverage; that the defendants maintained he had resigned voluntarily; that the plaintiffs filed claims for insurance benefits to which they were entitled; and that the defendants wrongfully failed and refused to provide the benefits contracted for. Count two of the complaint asserted that the railroad had willfully misinformed CSX and Travelers about the termination of Mr. Beard's employment in an effort to deprive the plaintiffs of benefits to which, as the railroad knew, they were entitled; that CSX and Travelers refused to pay the benefits in question notwithstanding that the companies were in possession of sufficient information to conclude that the plaintiffs were entitled to payment; that the defendants' acts constituted an intentional and malicious interference with the plaintiffs' contractual rights; and that the defendants intentionally inflicted emotional distress upon the plaintiffs. The complaint concluded with a prayer for actu-al and punitive damages and a demand for trial by jury on those issues so triable.

The railroad and CSX filed a timely petition for removal to federal court, asserting that the action arose under the laws of the United States and was removable under 28 U.S.C. § 1441(a) and (b). A few days later the same defendants moved for dismissal of the action on the ground that it was preempted by the exclusive and compulsory claim procedures of the Railway Labor Act and the governing collective bargaining agreement. An accompanying memorandum of law argued that even in its tortious aspect, the dispute grew out of "grievances" or out of "the interpretation or application" of collective bargaining agreements, and was therefore subject to mandatory arbitration before an adjustment board. See 45 U.S.C. §§ 152 and 153; *Andrews v. Louisville and N.R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). Defendant Travelers subsequently filed a similar motion, adopting the railroad/CSX brief by reference.

The plaintiffs filed an opposing memorandum in which they argued that removal was improper, that their claims were not within the exclusive jurisdiction of the federal court, and that neither the Railway Labor Act nor any collective bargaining agreement preempted their action. The plaintiffs' memorandum stated that their proofs would establish that Mr. Beard's former supervisor had developed a personal animosity against the plaintiffs after Mrs. Beard refused his sexual advances, and that the supervisor deliberately arranged to have Travelers misinformed about Mr. Beard's departure in order to retaliate. Citing *Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the plaintiffs argued that redress for such outrageous conduct was not limited to that available under the Railway Labor Act, and that Mr. Beard could not proceed under that act in any event because he was no longer an "employee." Mrs. Beard, moreover, had never been an employee, and could not submit herself to the jurisdiction of the adjustment board even if she wanted to.

In a judgment entered on July 18, 1988, the district court dismissed count one of the complaint without prejudice and re-

manded count two to the Circuit Court of Carroll County. The district court's judgment was accompanied by an opinion stating that removal of the case had been proper because count one was really a claim under the Railway Labor Act; that removal was proper under the "complete preemption" doctrine of *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); that even though the case was properly removed, count two of the complaint was only tangentially related to the collective bargaining agreement; and that under *Miller v. Norfolk & W. Ry.*, 834 F.2d 556 (6th Cir.1987), the district court lacked jurisdiction to decide the merits of count two.

The plaintiffs did not appeal the dismissal of count one, but the railroad and CSX perfected a timely appeal from the remand of count two. Travelers did not appeal within the time allowed by the rules. On September 21, 1988, however—64 days after the entry of judgment—Travelers moved the district court for an extension of time within which to file a notice of cross-appeal. There being no objection from the plaintiffs, the district court granted the motion. Travelers filed a notice of cross-appeal on October 28, 1988.

### II

■ None of the parties questioned the timeliness of Travelers' appeal, but we have an obligation to consider the issue *sua sponte*. *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976). Under Fed.R. App.P. 4(a)(1), Travelers had 30 days after entry of judgment in which to file a notice of appeal. Failing that, Rule 4(a)(5) allows a party to file a motion for extension of time "not later than 30 days after the expiration of the time prescribed by ... Rule 4(a)"—*i.e.*, up to 60 days after entry of judgment, but no later than that. Time limits such as these are strictly enforced. *Baker v. Raulie*, 879 F.2d 1396, 1398 (6th Cir.1989). The motion Travelers filed on the 64th day (a Wednesday, as it happens) simply came too late.

Travelers cites no authority, nor has this court found any, suggesting that a district court may grant an extension of time after the statutory period for requesting such an extension has passed. "[T]he taking of an appeal within the prescribed time limits is mandatory and jurisdictional." *Budinich*

*v. Becton Dickinson and Co.*, 486 U.S. 196, ——, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178, 186 (1988). The district court was without authority to extend the period for filing a notice of appeal, and we lack jurisdiction to consider Travelers' appeal. See *Pryor v. Marshall*, 711 F.2d 63, 64 (6th Cir.1983).

### III

■ The appeal of the railroad and CSX presents a different jurisdictional issue. We have authority to decide appeals from "final decisions" of the district courts, 28 U.S.C. § 1291, but an order of remand on jurisdictional grounds is appealable neither as a final judgment nor as an interlocutory ruling that comes within the "collateral order" exception to the final judgment rule. *Price v. PSA Inc.*, 829 F.2d 871, 873–74 (9th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). If such a remand is subject to review at all, it can only be by way of mandamus—and in one of the briefs filed by the railroad and CSX, these appellants ask us to exercise our mandamus authority, as we did in *In re Romulus Community Schools*, 729 F.2d 431 (6th Cir.1984). Although no formal petition for a writ of mandamus has been filed here, the appeal itself may be treated as a petition. *Hammons v. Teamsters, Chauffeurs, Etc. Loc. No. 20*, 754 F.2d 177, 179 (6th Cir.1985).

Our power to review remand orders by way of mandamus is circumscribed by 28 U.S.C. § 1447(d). That statute provides as follows:

"An order remanding a case to the State court from which it was removed is not reviewable on appeal *or otherwise*, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title [addressing civil rights cases] shall be reviewable by appeal or otherwise." (Emphasis supplied.)

The Supreme Court has given § 1447(d) a narrow interpretation; in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Court held that the prohibition against appellate review of remand orders applies only to remand orders issued on nonstatutory grounds. At one point in its opinion, indeed, the *Thermtron* Court declared that "only remand orders issued under § 1447(c) and invoking the grounds specified therein—that removal was improvident and

without jurisdiction—are immune from review under § 1447(d)." *Id.* at 346, 96 S.Ct. at 590.

It is probably appropriate to read this particular passage from *Thermtron* "against the circumstances of that case." See *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 355, 108 S.Ct. 614, 621, 98 L.Ed.2d 720, 733 (1988). The circumstances of *Thermtron,* as the Court repeatedly emphasized, were that a properly removed diversity case had been remanded without any statutory authority whatever. See *e.g.,* the opening sentence of *Thermtron:* "The questions in this case are whether a Federal District Judge may remand a properly removed diversity case *for reasons not authorized by statute,* and, if not, whether *such* remand order may be remedied by writ of mandamus." 423 U.S. at 337, 96 S.Ct. at 586 (Emphasis supplied). See also *Id.* at 351, 96 S.Ct. at 593: "Because the District Judge remanded a properly removed case on grounds that he had no authority to consider, he exceeded his statutorily defined power; and issuance of the writ of mandamus was not barred by § 1447(d)." For purposes of analysis, therefore, we shall assume that if the *Thermtron* remand order had been issued under the authority of any statute—even a statute other than 1447(c)—the Supreme Court would have held the order nonreviewable.

We find two possible statutory sources of authority for the remand order in the present case: 28 U.S.C. § 1447(c) and 28 U.S.C. § 1441(c). We shall consider each in turn.

Section 1447(c), as in effect at the time of the remand in July of 1988, provided in part as follows:

"If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case."

We are satisfied that the instant case was not removed "improvidently and without jurisdiction," so the remand could not have been effected under the authority of § 1447(c).

The other statute, 28 U.S.C. § 1441(c), provides as follows:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues, therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

■ The district court's opinion suggests that the court viewed count one of the complaint as stating the claims "separate and independent" from the claims asserted in count two, but the court clearly was not purporting to exercise any discretion when it remanded count two: ignoring § 1441(c), the court repeatedly said that it was remanding the matter because "this court lacks jurisdiction to decide the merits...." The district court was thus not relying on § 1441(c) to justify the remand, just as it was not relying on § 1447(c)—and under these circumstances, at least, *Thermtron* teaches that a court of appeals does have authority to review the remand order by way of mandamus. See *In re Life Ins. Co. of North America,* 857 F.2d 1190 (8th Cir. 1988) (district court order remanding claim based on legal determination that claim was not preempted by federal law is reviewable by mandamus). Mandamus is a discretionary remedy, of course, but the tone of *Thermtron* suggests that we would probably be well advised to exercise our discretion in favor of review here.

## IV

The Railway Labor Act gives the National Railroad Adjustment Board exclusive jurisdiction over disputes that arise out of collective bargaining agreements. *Union Pac. R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). The final and exclusive jurisdiction of the Board has a broad sweep; no grievance that may fairly be said to stem from the collective bargaining agreement is excluded. See *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, 1052 (7th Cir.1983), *cert. denied,*

465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

■ Mr. Beard argues that his tort claims do not come within the Adjustment Board's jurisdiction because he had left his employment with the railroad before filing suit, and thus he is not an "employee" as defined in the Act. The argument is not persuasive. The Act has been applied to a former airline pilot, even though he had filed his claim after leaving the airline's employ. *Air Line Pilots Assoc., Int'l v. Alaska Airlines, Inc.*, 735 F.2d 328, 329 (9th Cir.1984). As the Supreme Court has noted, there is no reason to insist that the claimant be an employee throughout the arbitration process, so long as "the claim itself arises out of the employment relationship which Congress regulated." *Pennsylvania R.R. v. Day*, 360 U.S. 548, 551–52, 79 S.Ct. 1322, 1324–25, 3 L.Ed.2d 1422 (1959).

The pertinent question here is not whether Mr. Beard is still an employee, but whether the "action is based on a matrix of facts which are inextricably interwined with the grievance machinery of the collective bargaining agreement and the R.L.A." *Stephens v. Norfolk & W. Ry.*, 792 F.2d 576, 580 (6th Cir.1986), *amended*, 811 F.2d 286 (6th Cir.1986).

This "inextricably interwined" test has also been used by the Supreme Court in cases under § 301 of the Labor Management Relations Act. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), another § 301 case applying the test, the Court held that the state causes of action are not preempted if "resolution of the state-law claim does not require construing the collective-bargaining agreement." 108 S.Ct. at 1882.

The standards under the two statutes may not be identical. The Railway Labor Act makes all grievances arising out of the collective bargaining agreement subject to arbitration, and it is probably more likely that a state claim will interfere with feder-

al interests in the context of that statute. *Jackson*, 717 F.2d at 1052. The *Lingle* approach is instructive here nonetheless. Section 3 of the Railway Labor Act has essentially the same function at § 301 of the Labor Management Relations Act. *Deford v. Soo Line R.R.*, 867 F.2d 1080, 1086 (8th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). Further, the test in *Lingle* is consistent with the standards other circuits have applied in railroad cases. See *Choate v. Louisville & N.R.R.*, 715 F.2d 369, 372 (7th Cir.1983) (the claim is preempted if "[t]he adjudication of his claim would necessarily involve interpretation of the collective bargaining agreement").

■ In the case at bar it seems to us that adjudication of the tort claims would require interpretation of the collective bargaining agreement. The first of the tort claims is for wrongful interference with contract. This claim would require interpretation of the collective bargaining agreement because Kentucky makes breach of contract an essential element of the tort. *Industrial Equipment Co. v. Emerson Elec. Co.*, 554 F.2d 276, 289 (6th Cir.1977).[1] The second of the tort claims involves the intentional infliction of emotional distress, an area in which Kentucky follows the Restatement (Second) of Torts, § 46. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky.1984). The Restatement provides that the actor is not liable "where he has done no more than to insist upon his legal rights in a permissible way." Restatement (Second) of Torts, § 46, comment *g*. A determination of the railroad's "legal rights" would require the court to resort to the provisions of the collective bargaining agreement.

A different situation was presented in *Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), where a state claim for the intentional infliction of emotional distress was held not to be preempted by § 301 of the Labor Management Relations Act because the claim could be resolved without "resolution of the 'merits' of the underlying labor dispute." *Farmer*, 430 U.S. at 304, 97 S.Ct. at 1066. As the Court noted:

---

**1.** Ohio law is to the contrary. In *Dougherty v. Parsec, Inc.*, 872 F.2d 766 (6th Cir.1989), therefore, we held that a claim for tortious interfer-

ence with contract under Ohio law was not preempted by § 301.

"it is essential that the state tort be either unrelated to the employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than as a function of the actual or threatened discrimination itself." *Id.* at 305, 97 S.Ct. at 1066.

The conduct complained of in *Farmer* included "frequent public ridicule" and "incessant verbal abuse," *id.* at 293, 97 S.Ct. at 1059. The claims in the case at bar, in contrast, turn on the availability of benefits under the collective bargaining agreement. If no benefits were due under the contract, there could be no case. The fact that the emotional distress claim seeks damages for the loss of insurance benefits further suggests that this claim is not independent of the collective bargaining contract. Mr. Beard's claim falls within the exclusive jurisdiction of the Railroad Board.

■ Nothing in the Employee Retirement Income Security Act (ERISA) affects this conclusion. ERISA provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). This language has been held to preserve the Adjustment Board's exclusive jurisdiction under the Railway Labor Act, even where the dispute involves an employee benefit plan. *De La Rosa Sanchez v. Eastern Airlines, Inc.,* 574 F.2d 29, 33 (1st Cir.1978). "Despite its express provision allowing suits over the coverage and application of pension plans to be brought in federal court, ERISA was not intended to, nor did it, preempt the mandatory arbitration provisions of the Railway Labor Act." *Bonin v. American Airlines, Inc.,* 621 F.2d 635, 638 (5th Cir.1980). See also *Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc.,* 627 F.2d 272, 276 (D.C.Cir.1980). Whether or not the present claims are covered by ERISA, therefore, they are subject to the primary and exclusive jurisdiction of the Adjustment Board, except insofar as any independent claims of Mrs. Beard may be concerned.

The appeal of defendants The Travelers and The Travelers Companies is DISMISSED. The appeal of defendants Carrollton Railroad and CSX Transportation, Inc., is treated as a petition for a writ of mandamus, and the petition is GRANTED. The case is remanded to the district court with directions (a) to vacate the order remanding count two to the state court and (b) to dismiss count two without prejudice.

## ON PETITION FOR REHEARING

PER CURIAM. The appellees, R. Paul and Scarlett Beard, have petitioned for a rehearing of the decision announced by this court on December 28, 1989, in an opinion reported at 893 F.2d 117. The petition raises three points, which we shall address in turn.

1. Because Travelers' appeal was untimely and, as we held, this court had no jurisdiction to consider it, the Beards suggest that there is confusion as to whether our direction to dismiss count two of the complaint applied as to Travelers as well as to the other defendants.

The legal issues that Travelers sought to raise on appeal were identical to those discussed in Part IV of our opinion, and the Beards have not stated an independent claim against Travelers. We assume, therefore, that the district court will dismiss the claim against Travelers.

2. Because Mrs. Beard may have claims that are not subject to the primary and exclusive jurisdiction of the Adjustment Board, the Beards suggest that her claims ought not to have been dismissed. It seems to us that dismissal of her claims would be appropriate, however, because Mrs. Beard would have no right of recovery if it is ultimately determined that her husband has none.

3. The Beards suggest that because there is no dispute among the parties concerning the proper interpretation of the collective bargaining agreement, and because the tort claims arose after the termination of Mr. Beard's employment, the district court's order remanding the state law claims to the Carroll Circuit Court ought to have been affirmed in its entirety. The Railway Labor Act, however, speaks to "the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation *or application* of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151(a) (emphasis supplied). This court has determined that "where it is clear that resolution of the state claim will require *application* or interpretation of the collective bargaining agreement ... the claim is considered to be inextricably intertwined with the matrix of the federal labor law." *Miller v. Norfolk & W. Ry.,* 834 F.2d 556, 565

**124**

(6th Cir.1987) (emphasis supplied). The Beards' state law claims cannot be decided without "reference" to the collective bargaining agreement, *see Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1331 (6th Cir.) (en banc), *cert. denied,* — U.S. —, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), and under the law of this circuit, the two are inextricably intertwined. Without looking at the terms of the contract, there can be no claim.

The petition for rehearing is DENIED.