**Gloria Jean SMITH, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC., Defendants.**

**No. 00–2991 D/V.**

United States District Court, W.D. Tennessee, Western Division.

May 7, 2001.

938

Gloria Jean Smith, Memphis, TN, pro se.

Herbert E. Gerson, Licia Michelle Williams, Ford & Harrison, LLP, Memphis, TN, for Northwest Airlines, Inc., defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

DONALD, District Judge.

Pursuant to Fed.R.Civ.P. 12(b)(1), Defendant Northwest Airlines ("NWA") moves to dismiss the present action for lack subject matter jurisdiction. Pro se Plaintiff Gloria Jean Smith has alleged that Defendant discriminated and harassed her on the basis of gender, and retaliated against her in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 ("Title VII"). The Court has jurisdiction under § 1331. For the reasons herein, the Court **DENIES** Defendant's motion to dismiss Plaintiff's Title VII claims.

## I. Factual and Procedural Background

On December 14, 1998, NWA hired Plaintiff to work in the Minneapolis Air-port. On November 1, 1999, Plaintiff applied for and was awarded a position as an "Aircraft Cleaner" at the Memphis International Airport. On February 16, 2000, Defendant terminated her from that position. . Plaintiff was placed on layoff status, which entitled her to return to her prior position or to bid on another position. Plaintiff subsequently filed charges with the EEOC. On September 7, 2000, Plaintiff was issued a Notice of Right to Sue, and filed her complaint in this Court on October 18, 2000.

Defendant served its Rule 12(b)(1) motion to dismiss on March 16, 2001. Pursuant to Local Rule 7.2, Plaintiff was required to respond within thirty days. Plaintiff has neither filed a response nor requested an extension of time to respond. As Plaintiff has exceeded the deadline to respond, the Court will decide Defendant's motion on the existing record.

## II. 12(b)(1) Standard

Motions pursuant to Fed. R.Civ.P. 12(b)(1) that challenge the Court's subject matter jurisdiction come in two forms. First, a defendant may facially attack the complaint by merely testing the sufficiency of the pleading. *Alpine Industries v. FTC*, 40 F.Supp.2d 938, 939 (E.D.Tenn.1998). In considering a facial attack, the correct standard of review for the trial court is to treat the complaint's factual allegations as true. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990).

On the other hand, a defendant may argue the existence or non-existence of certain facts which deprive a court of subject matter jurisdiction. *Thomson v. Ohio State Univ. Hosp.*, 5 F.Supp.2d 574, 576 (S.D.Ohio 1998). In such circumstances, a court may resolve factual issues necessary to determining whether it has

jurisdiction. *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir.1996); *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 918 (6th Cir.1986). As subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, the court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional power. *5A* Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (2d ed.2000).

In the present case, Defendant argues the existence of facts that allegedly deprive the Court of jurisdiction over the matter. Defendant asserts that, as an air carrier, it is subject to the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* The RLA gives the National Railroad Adjustment Board ("NRAB") exclusive jurisdiction over certain disputes arising out of collective bargaining agreements ("CBA"). Defendant accordingly submits to the Court the CBA covering Plaintiff's employment, and asserts that, because her claims require interpretation of the CBA, they should be considered by the NRAB and not the Court. Therefore, in evaluating Defendant's Rule 12(b)(1) motion, the Court will review documents extraneous to Plaintiff's complaint, including the CBA.

### III. Analysis

 The RLA promotes stability in labor-management relations by providing efficient remedies for labor disputes, thereby protecting an important national industry. *Stephens v. Norfolk and W. Ry. Co.,* 792 F.2d 576, 579–80 (6th Cir.1986). The RLA establishes a mandatory arbitral mechanism for the employee and employer that provides for the orderly settlement of all disputes growing out of interpretations of the CBA concerning rates of pay, rules, or working conditions. 45 U.S.C. §§ 151a(4), (5), 153 First (i); *Stephens,* 792 F.2d at 580. There are two types of disputes, styled "major" and "minor" disputes. *Hawaiian Airlines, Inc. v.. Norris,* 512 U.S. 246, 253, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994). Major disputes relate directly to the formation of collective bargaining units, and are not at issue in the instant case. Minor disputes, however, which arise out of the interpretation of the CBA, are potentially at issue. *Id.*

 The RLA provides that minor disputes initially be settled through grievance procedures established in the CBA. § 152 First. If such efforts are unsuccessful, parties are required to submit to binding arbitration by the NRAB or a privately established arbitration panel. § 153 First (i). The NRAB has primary and exclusive jurisdiction over minor disputes. *Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 328, 89 S.Ct. 548, 550, 21 L.Ed.2d 519 (1969); *Stephens,* 792 F.2d at 580. A minor dispute, in the broadest terms, is an action based on a "matrix of facts" which are "inextricably intertwined" with the CBA. *Stephens,* 792 F.2d at 580. Resolution of a minor dispute, however, must give effect to the CBA. *Norris,* 512 U.S. at 254, 114 S.Ct. at 2244. Because a Court must merely refer to the CBA in adjudicating a claim does not therefore make such a claim a minor dispute. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211–12, 105 S.Ct. 1904, 1911–12, 85 L.Ed.2d 206 (1985). Instead, the distinguishing feature of a minor dispute is that it may be conclusively resolved by interpreting the CBA. *Norris,* 512 U.S. at 256, 114 S.Ct. at 2245.

For example, in *Beard v. Carrollton R.R.,* 893 F.2d 117, 121 (6th Cir.1990), the court found the plaintiff's two claims preempted by the RLA. The plaintiff first alleged that, due to the employer's wrongful interference, he did not receive insurance benefits pursuant to his employment contract. The court found that the plaintiff's tort action depended on whether his

employer breached the employment contract. Therefore, the plaintiff's claim could be reduced to whether or not the employer had complied with procedures established by the CBA. The plaintiff in *Beard* also brought an intentional infliction of emotional distress claim. A defense to that claim included the assertion that the employer did no more than insist upon its "legal rights" in a permissible way. The Court found that the employer's "legal rights" were conferred by the CBA. Concluding that the plaintiff's claims were derived from the provisions of the CBA, the court held that the RLA pre-empted his state law claims.

Likewise, in *Stephens*, the plaintiff brought a disability discrimination claim against his employer. The state law prohibited discrimination based on a handicap unrelated to the employee's ability to perform the duties of a particular job. The Court held that the RLA preempted the matter because the CBA defined the physical qualifications required of employees, and any disagreement with the employer's decision necessarily required interpretation and application of the CBA. *Stephens*, 792 F.2d at 580.

 In determining whether the RLA pre-empts the plaintiff's claim, courts will look to decisions relating to § 301 of the Labor Management Relations Act ("LMRA"). *Beard*, 893 F.2d at 122. The LMRA requires that federal rules of decision be applied to any claim involving the interpretation of a CBA. 29 U.S.C. § 185(c); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S., 399, 403, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988). Because the same standard is used to determine the result, cases that involve § 301 of the LMRA provide the appropriate framework for addressing RLA preemption issues. *Norris*, 512 U.S. at 263, 114 S.Ct. at 2249.

In *Lingle*, for example, the plaintiff claimed that the employer discharged him because he exercised his rights under the state's workers compensation act. The plaintiff filed a grievance with the union, stating that he was not fired for "just cause" as defined by the CBA. At the same time, the plaintiff filed a state law retaliatory discharge claim against the employer. The Supreme Court held that the plaintiff's state action was not pre-empted by § 301 of the LMRA. *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. The plaintiff's retaliatory discharge claim required him to show that (1) he was discharged or threatened with discharge; and (2) the employer's motive was to deter him from exercising his rights under the worker's compensation act. The Court found that neither of these elements required a court to interpret any term of the CBA. The Court acknowledged that the employer's defense, that it had a non-retaliatory reason for the discharge, may involve attention to the same factual considerations as the employee's just cause claim. The Court declined to hold, however, that such parallelism rendered the state-law analysis dependent upon resolution of the CBA. *Id.* at 408, 108 S.Ct. at 1883. The Court instead found that the employer's defense involved a factual inquiry that did not turn on the meaning of any provision of the CBA, but rather on the employer's conduct and motivation. *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. The Court reasoned that § 301 of the LMRA did not pre-empt substantive rights a state may provide to workers when adjudication of those rights does not *depend* upon the interpretation the CBA. *Id.* at 409–410, 108 S.Ct. at 1883.

In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the plaintiff, brought a tort action against his employer, alleging a bad-faith

handling of an insurance claim. The Court held that the state law claim was preempted by § 301 of the LMRA. *Allis–Chalmers*, 471 U.S. at 218, 105 S.Ct. at 1915. The CBA provided for the insurance benefits, as well as the right to have payments made in a timely manner. Whether the insurer was in breach, therefore, could only be ascertained from the interpreting the CBA. *Id.* at 216, 105 S.Ct. at 1914.

From the above cases, it becomes clear that, when a cause of action ultimately concerns an issue unrelated to the CBA, then the RLA does not pre-empt the plaintiff's statutory claim. In the present case, Plaintiff brings, pursuant to Title VII, three distinct causes of action: a hostile environment claim, a retaliation claim, and sexual discrimination claim.

## A. Hostile environment claim

Plaintiff's hostile environment claim is not pre-empted by the RLA. To be actionable, hostile environment harassment "must be sufficiently severe or pervasive" to alter a term, condition, or privilege of the claimant's employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 485 (6th Cir.1989); *Ellison v. Brady*, 924 F.2d 872, 876 (9th Cir.1991). Both an objective and a subjective test must be met. The conduct must be sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as such. *Harris*, 510 U.S. at 21–22, 114 S.Ct. at 370–71. A court must consider the totality of the circumstances in determining whether, objectively, the alleged harassment constitutes a hostile

work environment. *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 32 (1996).

The elements of a hostile environment claim, that because of Plaintiff's gender, she was subjected to severe and pervasive harassment that was both objectively and subjectively offensive, have no bearing on the contractual terms of the CBA. Although the employer's conduct must be so severe as to "alter the terms of employment," this analysis does not depend on the CBA. Rather, it is determined from a reasonable person's view whether the alleged behavior is severe. In determining the validity of Plaintiff's sexual harassment claim, parties will find it unnecessary to consult, even in the most cursory manner, terms in the CBA. Accordingly, the Court finds that Plaintiff's hostile environment claim is derived purely from her statutory rights.

## B. Retaliation claim

Likewise, Plaintiff's retaliation claim does not implicate the CBA. To show retaliation, the plaintiff must show that (1) the plaintiff engaged in activity protected by Title VII; (2) the employer had knowledge of the plaintiff's protected conduct; (3) the plaintiff was subjected to adverse employment action; and (4) the employer must have taken the adverse action because the plaintiff engaged in protected activity. *Christopher v. Stouder Mem. Hosp.*, 936 F.2d 870, 877 (6th Cir.1991). Nothing in the plaintiff's proof would implicate a contractual term found in the CBA.

## C. Disparate treatment claim

Although presenting a closer question, Plaintiff's disparate treatment claim is not pre-empted by the RLA. To base an employment discrimination claim

on disparate treatment, the employee must show discriminatory motive. Such proof can be established by direct evidence or may be inferred from a prima facie showing of discrimination. *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995). Where the plaintiff-employee offers no direct evidence of unlawful discriminatory intent, the order and allocation of burdens of proof are as established by the evidentiary framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

 Under the *McDonnell Douglas* burden shifting framework, the plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. *Wilson v. Stroh Companies, Inc.*, 952 F.2d 942, 945 (6th Cir.1992). If the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Once the employer provides a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff may still prevail if evidence has been proffered that tends to disprove the reasons offered by the defendant. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 347 (6th Cir.1997). Even if the plaintiff proves that the employer's proffered reason is pretext, he still bears the ultimate burden of proving that a discriminatory intent motivated the defendant's actions. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

 To meet his first burden and establish a prima facie case of discrimination, the plaintiff must prove that the plaintiff (1) is a member of a protected group, (2) was subject to an adverse employment action (3) was qualified for the position sought or held, and (4) was replaced by a person outside the protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994). The fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995).

Unlike Plaintiff's hostile environment and retaliation claims, her sexual discrimination claim does implicate the CBA. Defendant asserts that, in evaluating whether or not Plaintiff is qualified, the Court must interpret the CBA. Defendant argues that the CBA provides for a comprehensive procedure by which Plaintiff's qualification or disqualification from the cleaner position can be determined. For example, the CBA provides for a qualification period, the length of that qualification period, the mechanisms for any management review of her performance during the qualification period, and the employee's entitlement to union representation during such reviews. (Defendant's Motion to Dismiss, pp. 5–6). Defendant contends that Plaintiff's claim is therefore dependent on the CBA. The authority, however, is contrary to Defendant's position.

In *Beard*, the essential aspect of the plaintiff's tort was based on whether his employer breached his employment contract. In the present case, however, the essential aspect of Plaintiff's cause of action is whether or not she was discriminated against on the basis of an impermissible characteristic, which has no bearing on the CBA's application. Plaintiff's claim is also distinguishable from *Stephens*. In *Stephens*, the crux of the disability claim was whether the claimant was physically

**944**

qualified for the job, and the CBA defined what physical qualifications were required to perform the job. In the present case, however, the discrimination claim is not based on any trait that is relevant to job performance. Instead, it is based on characteristics completely unrelated to Plaintiff's job, and consequently, to the CBA.

 The present case is also distinguishable from *Allis-Chalmers*. In *Allis-Chalmers*, the plaintiff's tort remedy was essentially an action for breach of contract, and therefore its proof depended on construing the CBA's provisions. In contrast, a Title VII discrimination claim exists independently of any particular employment contract. Put another way, whether or not an employee has a Title VII discrimination claim is not necessarily answered by looking at the employment contract. For example, a plaintiff may show, by direct evidence, that the employer made an adverse employment decision based on an impermissible characteristic. *Huguley*, 52 F.3d at 1370. Liability would attach in such a situation regardless of the employee's qualifications. In addition, even when there is no direct evidence of discrimination available and the plaintiff is not found qualified, in certain circumstances the plaintiff may still prevail under a mixed-motive analysis. 42 U.S.C. § 2000e–2(m); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 256-57, 109 S.Ct. 1775, 1794–95, 104 L.Ed.2d 268 (1989); *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 996 F.2d 200, 201 n. 1 (8th Cir.1993).

Defendant's assertion that it's defense requires an interpretation of the CBA is also unavailing. Defendant asserts that any non-discriminatory reason it proffers for taking adverse action against Plaintiff must derive from the CBA. However, Defendant's argument is precluded by *Lingle*, where the Court held that determining the validity of the employer's defense was merely a factual inquiry as to the employer's motive, and did not give any effect to the CBA. *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. The Court in *Lingle* distinguished between (1) a contractual analysis, which is pre-empted by the RLA; and (2) the mere reference to the CBA that guides the court's analysis on a claim that is in essence unrelated to the CBA.

Ultimately, Plaintiff's Title VII claims fall into the framework articulated by the Supreme Court in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203. 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In *Norris*, the Court held that the plaintiff's retaliation claim was not pre-empted by the RLA. *Id.* at 258, 114 S.Ct. at 2246. The plaintiff alleged the employer had unlawfully terminated his employment in violation of a public policy. The Court held that, though the CBA provided certain protections, such as discharge for just cause only, the CBA was not the sole source of the plaintiff's right against wrongful discharge. *Id.* The Court held that, apart from any provision of the CBA, the employer had a state-law obligation not to fire the employee in violation of public policy. Likewise, in the present case, in addition to any responsibilities that the CBA confers on the employer, Defendant has a federal-law obligation to refrain from taking adverse actions against Plaintiff on the basis of her gender.

## D. Conclusion

In the past, courts were mindful that Congress, in enacting Title VII, recognized a duty to provide a judicial forum for the ultimate resolution of discriminatory employment claims. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974). However, the Supreme Court's pronouncement in *Gilmer v. Interstate/Johnson*

*Lane Corp.*, 500 U.S. 20, 33–34, 111 S.Ct. 1647, 1656–57, 114 L.Ed.2d 26 (1991) suggests otherwise. *Gilmer* involved a contract that was subject to the Federal Arbitration Act ("FAA"). The FAA instructs courts to abide by arbitration agreements, even if those agreements include federal substantive rights usually disposed of in judicial forums. *Id.* at 35, 111 S.Ct. at 1657. Second, in *Gilmer*, the plaintiff individually signed the arbitration agreement, and the Court found that the individual should be held to the bargain. *Id.* at 26, 111 S.Ct. at 1652. Finally, in *Gilmer* the sweeping agreement required arbitration of disputes relating to *any* controversy related to employment. *Id.* at 23, 111 S.Ct. at 1651. The Court held that arbitration was consistent with Title VII's structure and may be the favored remedial scheme in such circumstances. The factors making arbitration favorable in *Gilmer*, however, are absent in the present case.

In the instant case, the CBA is not subject to the FAA, as the FAA specifically does not apply to employment contracts of "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Second, Plaintiff did not individually agree to the CBA. Instead, the CBA was a result of collective bargaining. The Court in *Gilmer* expressed concern that in such situations the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit. *Gilmer*, 500 U.S. at 34, 111 S.Ct. at 1656 (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 58 n. 19, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974)). Therefore, the process of collective bargaining may not be an acceptable method to waive an individual's access to a judicial forum as to the adjudication of individual statutory rights. *Id.* at 35, 111 S.Ct. at 1657. Finally, in *Gilmer*, the ar-

bitration agreement related to *any* employment controversy. The RLA, however, makes arbitration mandatory only for claims that relate to pay, rules, or working conditions articulated in the CBA. 45 U.S.C. § 153 First (i); *see Norris*, 512 U.S. at 258, 114 S.Ct. at 2247 (confirming that "minor disputes" subject to RLA arbitration are those that involve duties and rights created or defined by the CBA). The CBA in the instant case does not itself require that allegations of employment discrimination matters be arbitrated. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 78, 119 S.Ct. 391, 395, 142 L.Ed.2d 361 (1998) (holding that any CBA requirement to arbitrate a discrimination claim must be particularly clear to be enforceable).

In sum, Plaintiff's Title VII claims do not invoke contract-based rights, but instead are independently derived from federal statute. This distinction was clearly made in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256, 114 S.Ct. 2239, 2245, 129 L.Ed.2d 203 (1994). Tellingly, the Court in *Norris* cited *United Airlines, Inc.*, 48 LA 727, 733(BNA) (1967) in support of this distinction, which held that the NRAB's jurisdiction did not extend to interpreting and applying the Civil Rights Act. *See also Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 439 (8th Cir.1998) (finding no RLA pre-emption in Title VII sex discrimination claim); *Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1419 (9th Cir.1995) (holding Title VII claims are not subject to RLA pre-emption). Additionally, the bare fact that the CBA will be consulted in the course of evaluating Plaintiff's claim does not require RLA pre-emption. *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994). Accordingly, the Court **DENIES** Defendant's motion to

dismiss Plaintiff's Title VII claims on RLA preemption grounds.

## IV. Order

For the foregoing reasons, the Court **DENIES** Defendants' Rule 12(b)(1) motion to dismiss Plaintiff's case, finding that this Court has subject matter jurisdiction.