914 F.2d 256
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tawana HIGGINS, Plaintiff-Appellant/Cross-Appellee,
v.
Shirley NEWHOUSE; Russell Newhouse; Christine Raszka;
Wendy Evans; Northwest Airlines, Inc., a Minnesota
corporation, doing business in Wayne County, Michigan,
jointly and severally, Defendants-Appellees/Cross-Appellants.
 Nos. 89-2099, 89-2133.
 United States Court of Appeals, Sixth Circuit.
 Sept. 6, 1990.
 
 1
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and GIBBONS, District Judge.*
 
 
 2
 PER CURIAM. Plaintiff-appellant/cross-appellee Tawana Higgins appeals summary judgment for defendants in this civil rights action for disparate treatment in employment. Defendants cross-appeal the denial of costs. For the following reasons, we affirm.
 
 
 3
 * Higgins, a black female, was employed by Northwest Airlines as a flight attendant from October 9, 1985 until her discharge on January 25, 1988. A collective bargaining agreement (CBA) governed the employment relationship between Higgins and Northwest. In addition, the Northwest flight attendant manual set forth the airline's policies and regulations and is incorporated by reference in the CBA.
 
 
 4
 During Higgins' first two years as a flight attendant, she was suspended once and reprimanded on several occasions for infractions of company regulations. On August 20, 1987, Higgins was assigned to fly with Shirley Newhouse. As Lead Flight Attendant, Newhouse was responsible for subordinate flight attendants. Newhouse reported to the pilot, her husband Russell Newhouse, that during the August 20 flight Higgins sang over the P.A. system, slept and drank alcohol while on duty, and refused to follow instructions. R. Newhouse had Higgins removed from the flight and reported her to Wendy Evans, Inflight Services Manager. Higgins denied the behavior and filed a grievance. On October 5, 1987 Higgins was given a ten-day suspension.
 
 
 5
 Further incidents occurred during a December 4-7, 1987 flight. Lead Flight Attendant Christine Raszka accused Higgins of refusing to follow instructions and sleeping in the passenger seats instead of working. Raszka also stated that Higgins verbally harassed and assaulted her by slamming her head into the wall of the aircraft. Higgins denied the assault on Raszka and asserted that Raszka assaulted her by grabbing the P.A. microphone from her and injuring her finger. Razka reported Higgins to Wendy Evans, the Inflight Services Manager, who again conducted an investigation. The investigation led to Higgins' dismissal on January 25, 1988. Higgins did not grieve her dismissal.
 
 
 6
 Higgins instituted this suit on May 5, 1988 in Wayne County (Michigan) Circuit Court. Her twelve-count complaint alleged libel, slander, interference with employment, racial discrimination in employment, assault and battery, and respondeat superior. Named as defendants were Northwest Airlines, Inc.; Wendy Evans, a Northwest management employee; Russell Newhouse, a Northwest Pilot; and Christine Raszka and Shirley Newhouse, Northwest flight attendants.
 
 
 7
 On June 14, 1988, defendants removed the action to the United States District Court for the Eastern District of Michigan, Judge Robert DeMascio presiding. Higgins' complaint charges Lead Flight Attendant Shirley Newhouse with libel, slander, and interference with employment; pilot Russell Newhouse with interference with employment; Lead Flight Attendant Raszka with libel and assault and battery; Manager Evans with interference with employment; and Northwest with a respondeat superior claim.
 
 
 8
 In addition, four defendants (all except Russell Newhouse) are charged with racial discrimination in employment in violation of the Elliott-Larsen Civil Rights Act, Mich.Comp. Laws Ann. Sec. 37.2101 et seq. (West 1985). Higgins bases the racial discrimination claim on the fact that after the dispute with the Newhouses, Higgins was suspended while the Newhouses, who are white, were not. Higgins says that the defendants were motivated by racial animosity. To support her claim of discrimination, Higgins points to an unsubstantiated rumor that another black flight attendant was reprimanded as a result of a report written by Raszka; that Shirley Newhouse, according to rumor, had been involved in a dispute with a white flight attendant who was not suspended; that Shirley Newhouse once referred to Higgins by her color and once referred to a group of black marines as "the black guys"; and that Evans documented a conference with Higgins and placed a copy of the memo in her file although the discussion was "off the record", while a similar "off the record" discussion with a white employee did not result in anything being placed in that employee's file. The race discrimination claim against Northwest is based on Higgins' termination, as well as her treatment by Northwest before termination. In addition, Higgins supplies two affidavits. The first, from Heidi Coup, a white flight attendant who worked the August 20 flight, states that Higgins did not sleep, drink alcohol, or behave unprofessionally on the flight, and that Shirley Newhouse "without provocation of any kind, verbally attacked[ed] Tawana Higgins on numerous occasions[.]" J.App. at 31. A second affidavit from a black Northwest pilot, Rudy Mack, stated that on one occasion he removed a white flight attendant for insubordination, that he himself was suspended while the white flight attendant was not, and that an arbitration panel subsequently exonerated him.
 
 
 9
 Defendants filed a motion for summary judgment on December 30, 1988. On March 17, 1989, the district court granted defendants' motion for summary judgment as to all twelve counts. The district court denied plaintiff's motion for reconsideration on April 17, 1989. On May 19, 1989, defendants filed a motion for costs and attorney fees, which the district court denied in an order dated August 24, 1989. Plaintiff appealed the grant of summary judgment for defendants on September 14, 1989. The defendants cross-appealed the district court's denial of costs on September 28, 1989.
 
 
 10
 The district court granted the defendants' motion for summary judgment, finding that plaintiff failed to make out a prima facie case of racial discrimination, and that the other claims were preempted by the Railway Labor Act. As prevailing party, defendants sought an award of costs under Fed.R.Civ.P. 54(d) and 28 U.S.C. Sec. 1920 and attorney fees pursuant to Fed.R.Civ.P. 11. The district court denied both motions, but the defendants appeal only the denial of costs.
 
 II
 
 11
 This court's review of a grant of summary judgment is de novo. Pinney Dock and Transport Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.1988). Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party may satisfy its burden by pointing out the lack of evidence in support of the non-moving party's case, rather than producing its own evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).
 
 A. The Railway Labor Act
 
 12
 The district court granted summary judgment on the libel, slander, assault and battery, and interference with employment counts because the court found that these claims are "minor disputes" under the Railway Labor Act (RLA). 45 U.S.C. Sec. 151 et seq. (1982). Congress enacted the RLA in 1926 to stabilize labor disputes between a carrier and its employees by providing remedies for disputes concerning "the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Id. at Sec. 153, First (i). The National Railroad Adjustment Board (NRAB) is the body accorded exclusive jurisdiction under the RLA to resolve minor disputes "over the meaning of an existing collective bargaining agreement in a particular fact situation generally involving on employee." McAlester v. United Air Lines, 851 F.2d 1249, 1252 (10th Cir.1988). Because the NRAB has sole jurisdiction over "minor disputes," employees may attempt to avoid the NRAB procedures by characterizing a labor dispute governed by a CBA as a state cause of action unrelated to the terms of the CBA. However, if the "action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and the R.L.A.," then the NRAB's exclusive jurisdiction preempts the action. Stephens v. Norfolk and W. Ry. Co., 792 F.2d 576, 580 (6th Cir.1986) (quoting Magnuson v. Burlington Northern, 576 F.2d 1367, 1369 (9th Cir.1978), cert. denied, 439 U.S. 930 (1978)). This court has stated that jurisdiction under the RLA is broad and that "no grievance that may fairly be said to stem from the collective bargaining agreement is excluded." Beard v. Carrollton R.R., 893 F.2d 117, 121 (6th Cir.1989).
 
 
 13
 Higgins argues that the charges are "wholly independent of any collective bargaining agreement and are outside the realm of labor legislation." Appellant's Brief at 9. Applying the "inextricably intertwined" test adopted in this circuit, however, we conclude that Higgins' claims of libel, slander, interference with employment, and assault and battery are "minor disputes" preempted by the RLA. All of the actions taken by Northwest employees which form the basis of this case were undertaken pursuant to the CBA. The lead flight attendants, S. Newhouse and Raszka, acted under authority of the CBA, which states "[t]he lead flight attendant is accountable for the conduct of all service, major rules violations ... and providing written reports for administrative action[.]" J.App. at 135. Defendant Evans, as Inflight Services Manager, was authorized "to remove from the service or flight any flight attendant who demonstrates inability or unwillingness to perform his/her duties in accordance with established procedures and practices." Id. As Captain, R. Newhouse had overall responsibility for the aircraft. Id.
 
 
 14
 The principal damages Higgins claims--loss of employment, loss of insurance, loss of financial security--stem from her discharge. Disagreement with Northwest over her discharge involves interpretation of the CBA, especially since the defendants claim to be acting pursuant to the CBA. Accordingly, we conclude that the libel, slander, interference with employment, assault and battery and respondeat superior claims are preempted by the RLA.
 
 
 15
 B. The racial discrimination in employment claims
 
 
 16
 Higgins' claims of racial discrimination in employment against S. Newhouse, Raszka, Evans and Northwest are based on Michigan's Elliott-Larsen Civil Rights Act, Mich.Comp. Laws Ann. Sec. 37.2202 (West 1985). The burden of proof in an Elliott-Larsen claim is essentially the same as is applied in a Title VII claim: once the plaintiff shows a prima facie case of discrimination, the burden shifts to the defendant, who can rebut by offering nonpretextual, nondiscriminatory reasons for the action. Jones v. Truck Drivers Local Union No. 299, 838 F.2d 856, 867 (6th Cir.1988), cert. denied, 110 S.Ct. 404 (1989).
 
 
 17
 Defendant argues that Higgins' race discrimination claim is also preempted by the RLA. The district court stated that this argument was "without merit," relying on Colorado Anti-Discrimination Comm'n v. Continental Airlines, 372 U.S. 714, 724 (1963). We agree with the district court that because plaintiff's race discrimination claim does not involve interpretation of the CBA, this charge is not preempted by the RLA. See McAlester, 851 F.2d at 1252-54 (RLA does not preempt civil rights claim based on 42 U.S.C. Sec. 1981).
 
 
 18
 The district court further found that Higgins failed to make a prima facie case against the individual defendants or against Northwest. The court stated:
 
 
 19
 Plaintiff's claim[s] of racial discrimination by the individual defendants are premised on rumors, innuendos, and conclusory allegations. Plaintiff has not produced any evidence that suggests racial animus in the treatment she received from her co-workers. No genuine issues of material fact supporting plaintiff's claims of race discrimination by the individual defendants exist.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 Plaintiff has not presented any evidence that similarly situated white employees were treated differently by Northwest. Thus, plaintiff has failed to make out a prima facie case of race discrimination by Northwest.
 
 
 23
 J.App. at 200.
 
 
 24
 We agree that Higgins has failed to make out a prima facie case. With regard to Raszka and S. Newhouse, Higgins offers as evidence of racial discrimination her own belief, and unsubstantiated rumors, of disparate treatment. This falls short of establishing a prima facie claim. See O'Shea v. Detroit News, 887 F.2d 683, 688 (6th Cir.1989).
 
 
 25
 Higgins' evidence against Evans is that Evans held an "off the record" conference with her and then placed a record of the conference in Higgins' file. At the same time, Evans held a similar conference with a white flight attendant without documenting the conversation. However, the second flight attendant was not the subject of an internal investigation, as was Higgins. Because these two circumstances are factually different, the district court concluded that allegations of discrimination by Evans were not supported by the evidence. We agree. In Stotts v. Memphis Fire Dept., 858 F.2d 289, 298 (6th Cir.1988), this court held that there could be no finding of disparate treatment based on comparisons of "factually unique and qualitatively dissimilar incidents and a corresponding series of appropriately individualized disciplinary actions[.]"
 
 
 26
 Higgins' racial discrimination claim against Northwest is based on her discharge, but she presents no evidence that similarly-situated white employees were not disciplined. Higgins denies the actions that led up to her dismissal, and offers the affidavit of another flight attendant on the August 20 flight which contradicts Northwest's version of events. However, mere denial of some of the events which Northwest cites as reasons for the firing does not establish a prima facie case of racial discrimination. Irvin v. Airco Carbide, 837 F.2d 724, 726 (6th Cir.1988). Even if the court assumes Higgins has made out a prima facie case, the lengthy record documenting Higgins' conflicts with Northwest during her nearly 3 1/2 years as a flight attendant establish a nondiscriminatory, nonpretextual reason for her dismissal.
 
 III
 
 27
 Defendants also appeal from the district court's denial of costs. In the district court's order denying costs, the court stated that "[a] request for the allowance of particular costs is premature until the party has filed its bill of costs with the clerk." J.App. at 294. The defendants took this to mean that their request for costs was denied because they submitted their request directly to the judge instead of first submitting a bill of costs to the clerk. The plaintiff has not addressed this issue in her briefs. Rule 54(d) states that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." Fed.R.Civ.P. 54(d). The Sixth Circuit has interpreted this language to "allow[] denial of costs at the discretion of the trial court." White & White, Inc. v. American Hosp. Supply Corp., 786 F.2d 728, 730 (6th Cir.1986). We conclude that the district court did not abuse its discretion, and therefore affirm the denial of costs.
 
 IV
 
 28
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Julia Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation