35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The REGISTRY HOTEL CORP., Plaintiff,
v.
SHELTER SEAGATE CORP., and Richard C. Becherer and Lawrence
Milton Richard, Defendants.
SHELTER SEAGATE CORP., Third-Party Plaintiff-Appellee,
v.
The ASSOCIATION OF UNIT OWNERS OF the REGISTRY HOTEL AT
PELICAN BAY, INC., Third-Party Defendant-Appellant.
 No. 93-1453.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1994.
 
 Before: MARTIN, NELSON and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The appellant seeks review of an interlocutory order denying summary judgment in an interpleader action. The district court's order is not appealable, and we shall dismiss the appeal for want of jurisdiction.
 
 
 2
 * This case involves a hotel in Pelican Bay, Florida. The hotel was built in 1985-86 by the appellee, Shelter Seagate Corporation. The hotel is owned by individual investors, each of whom holds title to one or more units in the hotel and a proportional share of the hotel's common areas. The owners are organized into an Association of Unit Owners. The Association, which is the appellant herein, is a Florida corporation run by the unit owners as their representative body.
 
 
 3
 The Association appointed Shelter Seagate as its agent before construction of the hotel was complete. Each investor in the hotel agreed to appoint Shelter Seagate as his or her individual agent to manage the hotel. Pursuant to these agency agreements, Shelter Seagate executed a management contract with the stakeholder in this interpleader action, Registry Hotel Corporation. Registry Hotel agreed to operate the hotel, to collect the revenues generated thereby, and to pay any profits to Shelter Seagate for distribution to the unit owners.
 
 
 4
 Shelter Seagate contracted to deliver a completed, fully furnished hotel unit to each investor, and to absorb construction cost overruns. A dispute arose between Shelter Seagate and the investors when, after completion of the hotel, it was discovered that the building's furniture had been procured through long-term leases, for which the investors remain liable, rather than having been purchased by Shelter Seagate. The leases burdened the unit owners with approximately $7 million in costs that Shelter Seagate, they say, should have absorbed.
 
 
 5
 After the hotel was transferred to the unit owners, the owners claimed to have discovered construction defects amounting to over $5 million. The investors filed a securities class action against Shelter Seagate and other parties in the Eastern District of Michigan. Becherer, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al., 799 F.Supp. 755 (E.D.Mich.1992), appeal pending, No. 93-1051 (6th Cir.). The Becherer lawsuit was filed in August of 1989.
 
 
 6
 In February of 1990 the Association's board of directors passed a resolution terminating the Association's principal-agent relationship with Shelter Seagate. Shelter Seagate asserted that the termination was ineffective, and it filed a notice of arbitration with the American Arbitration Association. On June 18, 1990, Shelter Seagate filed suit in a Florida state court, seeking to compel the Association to submit to arbitration.
 
 
 7
 On October 10, 1990, Shelter Seagate instructed Registry Hotel to transfer $500,000--the amount of hotel profits then available for distribution--to Shelter Seagate for distribution to the owners. The Association, fearing that Shelter Seagate would assert a right of set-off against the fund, informed Registry Hotel of its termination of the agency and asked Registry not to transfer the profits to Shelter Seagate. Confronted with conflicting claims to the half-million dollar fund, Registry Hotel filed this interpleader action in the district court on November 23, 1990.
 
 
 8
 The district court promptly enjoined the claimants from beginning or maintaining any litigation affecting the disputed fund. On January 9, 1991, the district court ordered the fund, and all future profits derived from the operation of the Pelican Bay hotel, to be held in escrow pending resolution of the interpleader action.
 
 
 9
 At meetings in September and November of 1992, the unit owners voted to terminate Shelter Seagate's agency and ratified the Association board's 1990 termination of the agency relationship.
 
 
 10
 On December 4, 1992, the Association moved for summary judgment. The Association submitted that because Shelter Seagate was no longer the agent of the Association and the hotel owners, it had no legitimate claim to the interpleaded funds and was not entitled to collect funds from Registry Hotel on the owners' behalf.
 
 
 11
 The district court denied the Association's summary judgment motion without prejudice on February 19, 1993. The court explained that summary judgment was inappropriate because facts to be developed in the Florida litigation would be relevant to determination of the merits of the interpleader action.
 
 
 12
 The Association filed a notice of appeal on March 19, 1993.
 
 II
 
 13
 The Association argues that appellate jurisdiction exists on one of two grounds. First, it contends that the district court's order is one continuing or refusing to dissolve an injunction, and is thus appealable under 28 U.S.C. Sec. 1292(a)(1). Alternatively, it says, the district court's order is a "collateral order" appealable as a "final decision" under 28 U.S.C. Sec. 1291.
 
 
 14
 * Section 1292(a)(1) establishes appellate jurisdiction over
 
 
 15
 "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."
 
 
 16
 The Association argues that the order denying its motion for summary judgment had the "practical effect" of continuing or refusing to dissolve an injunction. Two prior orders of the district court constituted injunctions that were continued by the February 1993 order, according to the appellant: the order issued on November 23, 1990, restraining the parties from "instituting or prosecuting any proceeding in any State or United States court affecting the Surplus Funds," and the order of January 9, 1991, directing Registry Hotel to place the hotel's profits in escrow. Because the denial of summary judgment had the incidental effect of leaving these two injunctions in place, the Association says, the order is appealable under 28 U.S.C. Sec. 1292(a)(1).
 
 
 17
 Assuming that the earlier orders were injunctions, we do not believe that the denial of summary judgment can sensibly be treated as an order "refusing to dissolve" them. It is true that if the motion for summary judgment had been granted, it would have had the incidental effect of rendering any injunctions moot. The summary judgment motion did not mention any prior injunction, however, did not present any argument relevant to its continued viability, and did not ask that the injunction be dissolved.
 
 
 18
 Under these circumstances, interlocutory appeal under Sec. 1292(a)(1) is inappropriate. Where a litigant has not asked the court to dissolve an injunction, a subsequent order should not be construed as an order "refusing to dissolve" it. See Beasley v. Union Pacific R.R., 652 F.2d 749, 750 (8th Cir.1981) (declining to construe denial of motion for summary judgment as an order refusing to dissolve a preliminary injunction issued earlier in the case); Dahlen v. Kramer Mach. & Eng. Prods. Co., 303 F.2d 293, 295 (10th Cir.1961) (refusing to treat denial of motion to dismiss as an order declining to dissolve a pre-existing preliminary injunction; while grant of motion would have rendered injunction ineffectual, motion did not specifically request that injunction be dissolved); 16 Charles A. Wright, et al., Federal Practice & Procedure Sec. 3924 at 90 (1977) (arguing that proper approach is to hold that where no express motion to dissolve an injunction has been made, no appeal can be taken).
 
 B
 
 19
 If appellate jurisdiction does not lie under Sec. 1292(a)(1), the Association argues, the court should nonetheless conclude that the district court's order is appealable as a "collateral order" under 28 U.S.C. Sec. 1291. The appellant did not raise this argument until its reply brief; accordingly, we shall not consider it. Wright v. Holbrook, 794 F.2d 1152, 1156-57 (6th Cir.1986).
 
 C
 
 20
 Where a litigant files a notice of appeal from a nonappealable order, the court may sometimes treat the notice of appeal as an application for a writ of mandamus. Beard v. Carrollton R.R., 893 F.2d 117, 120 (6th Cir.1989); Hammons v. Teamsters Local No. 20, 754 F.2d 177, 179 (6th Cir.1985). Mandamus is an exceptional form of relief, used primarily to limit the exercise of a district court's power to appropriate jurisdictional bounds.
 
 
 21
 Although the appellant raises substantial arguments concerning the scope of the district court's order escrowing the profits of the hotel as they accrue, we shall not treat this appeal as an application for a writ of mandamus. The appellant's arguments are best presented to the district court in the first instance, and our disposition of this appeal leaves them at liberty to seek dissolution or modification of the order for the reasons they sought to advance here.
 
 
 22
 Accordingly, this appeal is DISMISSED.